## HARDWICK SAVINGS BANK AND TRUST COMPANY *vs.* R. F. DRENAN.

January Term, 1899.

Present: ROWELL, TYLER, MUNSON, START, THOMPSON and WATSON, JJ.

Opinion filed April 29, 1899.

*Estoppel.*—In an action against the surety upon a bond given to the plaintiff bank as security for loans to be made by the bank to the principals upon the bond, the defendant claimed that it had been agreed between the principals and the defendant that another surety should be procured before the bond was used, and that the plaintiff, through one of its directors, had notice of the fact before it accepted the bond. *Held*, that if this claim were established the bank would be estopped.

*Evidence.*—The defendant offered to show a conversation between a witness and a director, in which the director said that if the principals did not get another signer to the bond, the bank would take a mortgage in place of such other signer. The plaintiff claimed that the evidence tended to show that this conversation took place, if at all, after the bond had been accepted and the loans made on the strength of it; the defendant claimed that the evidence tended to show that it occurred before. *Held*, that the offer should have been admitted, for if the conversation occurred before, it tended to show that the plaintiff had notice of the agreement, and it was for the jury to say when it occurred.

*Evidence—Duty to Deny.*—The principals failed, and were adjudged insolvent. Thereafter a director of the plaintiff interviewed the defendant, and the plaintiff was allowed to show that in that interview while the director was trying to persuade the defendant to sign notes with one of the principals to take care of the bond indebtedness, the defendant made no claim that he was excused. *Held*, that error does not appear in this, for the circumstances, which are only stated in substance, may have been such as to require the defendant's denial of liability and to make his silence unnatural.

*Evidence.*—It was immaterial whether the assignee in insolvency disposed of the estate to the best advantage, although he was one of the directors of the plaintiff, for the case shows that he was acting as assignee and not as director, and the plaintiff is not responsible for his conduct.

DEBT ON BOND. General issue and notice. Trial by jury, at the June term, 1897, Caledonia county, *Taft*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

The paragraph in the bill of exceptions relating to the interview between McLoud and the defendant is as follows:

Said McLoud was a witness for the plaintiff and was allowed to testify against the defendant's objection and exception that upon an occasion in the summer following the failure of Beede and Dow, when the witness and the defendant were discussing an arrangement with reference to the giving of certain notes by Drenan to be signed by Beede and the defendant in settlement of the bond indebtedness, the defendant made no claim but that he was liable upon the bond, nor that there was to have been another surety thereon.

The defendant offered to show that the goods and real estate of the insolvents were sold at a sacrifice. The offer was excluded and the defendant excepted. The defendants requested the court to charge that the action of McLoud, being a director of the plaintiff, in selling goods to said Johnson, another director, was in itself suspicious and put the burden on the plaintiff of proving such sale to have been advantageous and for full value, and that if McLoud sold the property mortgaged to the bank to another director of the bank, for less than its fair cash value, it released the defendant as surety to the extent of such loss to the bank. The court declined to charge according to these requests and the defendant excepted.

*George M. Powers* and *J. P. Lamson* for the defendant.

*Taylor & Dutton* and *W. P. Stafford* for the plaintiff.

TYLER, J. The plaintiff's evidence tended to show that in August, 1894, George A. Beede and George A. Dow formed a partnership for the purpose of carrying on a mercantile business in East Hardwick; that they purchased a store and arranged with the Merchants National Bank of St. Johnsbury to loan them money and to take their bond as security; that the bond was prepared, in which their names appeared as principals, a blank space being left for

the names of the sureties; that the bond was signed and sealed by Beede and Dow as principals, and by the defendant as surety; that the words, "one life insurance policy of George A. Dow," were written in the blank space in the place for the name of one surety, which was done before the bond was executed, with the defendant's knowledge and consent; that the bond was never delivered to the Merchants Bank, Beede and Dow arranging with the plaintiff bank through George L. Johnson, one of its directors, who resided at East Hardwick, and attended to its business there, to obtain their loans from the plaintiff; that the defendant consented in writing to the change; that the bond was altered so as to run to the plaintiff, and was delivered to it August 29, 1894; that the plaintiff had no knowledge of an agreement between the defendant and Beede and Dow that the bond should not be delivered until another surety had been obtained, and denied that there was such an agreement in fact; that no one in behalf of the plaintiff attempted to secure additional sureties to the bond prior to the advancement of the fifteen hundred dollars.

The bond was not delivered to the Merchants Bank, and there was no evidence that it consented to take a life insurance policy in place of a surety for Dow.

The plaintiff's evidence further tended to show that on August 29, 1894, Beede and Dow gave the plaintiff their note for fifteen hundred dollars, and on September 24, 1894, their note for four hundred and twenty-five dollars, and the plaintiff credited them those sums respectively, and allowed them to check against them; that before accepting the bond, the plaintiff made inquiries concerning the defendant, and becoming satisfied that his name was good for the amount of the bond, accepted it, and made the advances on his credit; that when credit was given for the first note, the plaintiff expected that no further loan would be required, and when application was made for another loan, it required further security, and the bond was then entrusted

to Beede and Dow, who attempted to procure other sureties, and failing in this, on September 18, 1894, gave the plaintiff a chattel mortgage upon their stock of goods as additional security.

Beede and Dow became insolvent, and were so adjudged, and their estate was settled in the court of insolvency. After the application of certain credits and a dividend in insolvency, a large sum still remained due upon the notes.

The defendant's evidence tended to show that Beede and Dow had agreed between themselves that each should furnish a surety upon the bond; that Beede should procure the defendant as his surety, and Dow his father as his surety; that when Beede, Dow and the defendant met to sign the bond, Dow's father was away from home, and the bond was left with Dow to procure his father's signature, with an agreement between Beede, Dow and the defendant that the bond should not be used until Dow's father had signed; that the words referring to the insurance policy were not in the bond when the defendant signed it, and were never written there with his knowledge and consent, but were inserted by Johnson afterwards; that at that time Johnson was informed by Beede and Dow that the bond was not to be used until Dow had procured his surety; and before the bond was delivered to Johnson, Dow and Johnson both tried to get another signer on the bond; that the defendant did not know that Dow's father had not signed the bond, nor that the policy had been substituted until after the plaintiff had made its advancements to Beede and Dow; that the taking of the chattel mortgage by the plaintiff was without the defendant's procurement; that the plaintiff took possession of the goods under the chattel mortgage soon after Beede and Dow went into insolvency.

(1) It is a sound proposition, that if an agreement was made between Dow, Beede and the defendant when the latter signed the bond, that it was not to be used until Dow procured a surety to sign it in his behalf, and the plaintiff

knew of the agreement when it accepted the bond, it would be such a fraud upon the defendant that the plaintiff cannot enforce the bond against him. This was the principal issue made at the trial, whether the plaintiff had such knowledge before it accepted the bond. It is not claimed by the defendant that the plaintiff had any knowledge of that fact unless it was chargeable with the knowledge that Johnson possessed.

The plaintiff's evidence showed that Johnson "looked after" its business in East Hardwick, and it may be assumed that he did so by the authority of the board of directors or with their acquiescence, and making loans was surely within the sphere of the plaintiff's business and consequently within the line of duty of the directors. It was held in *Foot &amp; Hodges* v. *R. R. Co.*, 32 Vt. 633, that the action of directors, though acting separately, if in the usual sphere of directors, binds the corporation, but it is unnecessary to go to that extent in the present case, for no point was made by the plaintiff in its brief or argument that director Johnson had not authority to negotiate this loan and arrange the security. The main issue of fact below was whether Johnson knew of the agreement between the principals and the surety before he accepted the bond. Upon this question evidence of a conversation was admitted between Johnson and the witness Norcross relative to another surety upon the bond, the defendant claiming the conversation was before the bond was delivered to the plaintiff, while the plaintiff claimed it was after that time. The defendant offered to show that at the time of this conversation Johnson told the witness "that if they did not get another signer to the bond the bank would take a chattel mortgage upon the goods in place of the other signer," which offer was excluded. It was for the jury to decide when the conversation occurred with reference to the delivery of the bond. If it was before, the evidence offered tended to show that Johnson knew of the agreement as claimed by the

defendant, and its exclusion was error, and clearly so in connection with evidence introduced by the defendant tending to show that before the bond was delivered Dow and Johnson both tried to obtain another signer upon it.

In view of Johnson's undisputed connection with the plaintiff and with the taking of the loan we think the excluded evidence had a tendency to show that the plaintiff had learned, through Johnson, of the agreement between the principals and the defendant before it took the bond. Notice to him was, in the circumstances, notice to the plaintiff. None of the other exceptions insisted upon by the defendant, are sustainable.

(2) From what appears in the exceptions we cannot say it was not unnatural that the defendant should have said he was not liable upon the bond if that was his claim. McLoud as the assignee in insolvency was trying to induce the defendant to give notes with Beede for the remainder due the plaintiff from Beede and Dow upon the bond indebtedness. The circumstances attending the conversation—which is only given in substance—may have been such as to require the defendant's denial that he was liable upon the bond and render his silence unnatural.

(3) It was not error to exclude the evidence offered which tended to show that the assignee did not dispose of the estates of Beede and Dow to as good advantage as he might have done. He was one of the plaintiff's directors, but the case shows that in what he did with the property he acted as assignee under the direction of the court of insolvency, and not as an officer of the plaintiff, which cannot, therefore, be affected by his action in that behalf.

(4) What Dow said to the witness Norcross when soliciting him to sign the bond as surety, no one representing the plaintiff being present, was not admissible upon any ground.

*Judgment reversed and cause remanded.*