## E. M. CRANE *vs.* S. E. DARLING.

January Term, 1899.

Present: TAFT, C. J., ROWELL, TYLER, MUNSON, START and WATSON, JJ.

Opinion filed May 3, 1899.

*Demurrer—Exception.*—It being conceded in argument, although not shown by the record, that the question raised in the supreme court was not made on the demurrer below, the question will not be considered.

*Slander of a Physician without Recorded License.*—A physician whose license has been duly recorded before the speaking of the slanderous words may have his action therefor, although his license was not recorded at the time to which the slanderous words referred, and although the statute prescribes a penalty for practicing before the license is recorded, if, as in this case, the words used charge the plaintiff with general professional ignorance and incompetency and use the case referred to merely as an illustration of the charge.

*Innuendoes.*—The court entertains no doubt that the words declared upon are susceptible of the meaning ascribed by the innuendoes.

*Charge—Exception.*—A party who secures the charge he asks for is not entitled to object that there is no evidence to which it can apply.

*Slanderer's Liability for Subsequent Circulation.*—The testimony of the plaintiff tended to show that the slanderous words were widely circulated, but there was nothing to show that the defendant had anything to do with their circulation otherwise than by making them in the first place. The defendant requested the court to charge that he was not liable for any circulation by others unless procured by him, and the court complied only by saying that the plaintiff could recover only such damages as he had sustained by reason of such circulation as could be traced to the defendant. *Held*, without considering the soundness of either the charge or the request, that the request was substantially complied with.

*Charge—Damages.*—The charge is not construed as treating the repetition of the slanderous words by others as an additional ground of recovery, but only as a ground for additional damages consequent upon the greater extent of injury occasioned thereby, and therefore it is held proper, herein following *Knott and Wife* v. *Stoddard*, 38 Vt. 35.

*Entrapping the Defendant into a Slander.*—The exception of the defendant to permitting the plaintiff to testify in chief to a conversation with the defendant, because the plaintiff sought the interview for the purpose of entrapping the defendant into a slander, was premature and unavailing, as the testimony tending to show that fact was not elicited until the

cross-examination, which was the proper time to have called the matter to the attention of the court.

*Circulation of Slander—Party Fulfilling his Offer to Connect Evidence.*— If the plaintiff was bound to fulfill his offer to show that the subsequent circulation of the slander was without participation on his part, this court is not prepared to say that he did not do so, as it does not appear exactly what he said, but only that in making inquiries he himself talked about the matter.

*Meaning of Words—Province of Jury.*—In actions for slander it is for the jury to say what the words meant, however they may have been understood by the hearers.

SLANDER. General issue. Trial by jury, at the December term, 1897, Caledonia county, *Thompson*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

The words were alleged to have been spoken of and concerning the plaintiff in his professional capacity as a physician and with the innuendoes stated in the opinion of the court. The words were, "The Currier boy died from the effects of iron which you injected into his nose; you killed the Currier boy by injecting iron into his nose; you killed that boy, (meaning said Harry Currier), he died from hemorrhage of the nose and throat caused by your injecting iron; you have been underhanded and dishonest in the means you have used to obtain patients ever since you went into practice; you have broken every rule of the ethical code of physicians in your practice; you are a dishonest, underhanded sneak."

*Barber & Darling* for the defendant.

*Taylor & Dutton* for the plaintiff.

ROWELL, J. Though not shown by the record, it is conceded in argument that the only question now made on the demurrer was not made below. This being so, the question cannot be raised thereunder here, for the reason given in *State* v. *Preston*, 48 Vt. 12. It is unnecessary, therefore, to consider whether the order to replead without prejudice to the demurrer is effective to reserve the benefit of it to the demurrant.

The declaration contains three counts, and alleges that before and at the time of speaking the words declared upon, the plaintiff was, and ever since has been, and still is, a physician, and that the words were spoken of and concerning him as such, and of and concerning his treatment of a certain Currier boy. It appeared in evidence that the plaintiff was a graduate of the medical department of the University of Vermont at the time he treated the boy, and was then practicing medicine at Hardwick, and had a license to practice from the Board of Censors of The Vermont Medical Society, but that his license had not been recorded in the *Medical Register* as required by statute, but was recorded therein before the speaking of the words.

The statute is, that if a person practices medicine, and is not duly authorized by a certificate issued and recorded as therein provided, he shall be fined. V. S. 4638. Therefore the defendant claims that the plaintiff could not be slandered in his profession by words spoken after his certificate was recorded, concerning his treatment of the boy before it was recorded, for that the actionable quality of the words must be determined as of the time of that treatment, at which time he was not a physician, as he had no right to practice, and therefore had no professional character as a physician, and that his subsequent authorization did not change his legal status as to prior acts.

But the jury has found, under a charge not excepted to on this point, that the defendant meant to charge the plaintiff with general professional ignorance and incompetency as a physician, and used the case of said boy merely as illustrative of the charge; and also meant to charge him with general professional misconduct and dishonesty in the means habitually resorted to by him to obtain practice. This meaning certainly touched the plaintiff in his profession at the time the words were spoken, and therefore makes them actionable, if they are susceptible of that meaning,

which is the one ascribed to them in the innuendoes; and that they are susceptible of it, we have no doubt.

The court limited recovery to the first and second counts, which declared upon words spoken at Taylor & Dutton's office. The third count, on which recovery was denied, declared upon a part only of what the defendant subsequently said to the plaintiff in a conversation at Kimball's drug-store. All that defendant said at the drug-store was admitted, and it amounted to a repetition of the charge in respect of the treatment of the Currier boy involved in some of the language declared upon in the other counts. The testimony on the part of the plaintiff tended to show that the defendant's statements concerning the treatment of the boy were widely circulated in the community; but there was nothing to show that the defendant had anything to do with their circulation, otherwise than by making them in the first place.

The defendant requested the court to charge that he was not liable for any circulation by others of the alleged slanderous words, unless procured by him. In answer to this request the court charged that the plaintiff could recover only such damages as he had sustained by reason of such circulation of said words as could be traced to the defendant, and did not otherwise comply with the request. The defendant claims that by this charge the jury was allowed to give damages for the speaking of the words in the drug-store, and for such circulation thereof, and of the slanderous words declared upon in the other counts, as could be traced to the defendant, although the third count had been laid out of the case, and the jury told to give it no consideration whatever, as there could be no recovery thereon, and although there was no testimony tending to show that the defendant had anything to do with the circulation of the slanderous words shown in evidence.

But we do not think it can be said that the charge allowed the jury to give damages for the speaking of the

words in the drug-store as a substantive ground of recovery, for both the request and the charge, as we construe them, relate solely to the circulation of the slander by others who were thereunto induced by something that the defendant said or did other than the speaking the words originally.

We also think that the charge was a substantial compliance with the request, saying nothing about the soundness of either. They raised a question of causation, and the proposition of both is, that the defendant must have been the occasioner of the circulation by others in some assignable way other than by speaking the words in the first instance, in order to be responsible therefor. The defendant having gotten what he asked for, cannot now be heard to complain that the testimony did not warrant the charge.

The defendant further claims that whatever else may be said of this part of the charge, it is erroneous in the rule of damages laid down, for that the repetition of slanderous words is admissible only on the question of *animus*, and never as an additional ground of recovery, and that to give it the latter force was error. But, as we have said, the charge does not relate to a repetition of the slander by the defendant, but only to a circulation of it by others, attributable to him as aforesaid; and we do not think it made such circulation an additional ground of recovery, but only a ground of additional damages consequent upon the greater extent of injury occasioned thereby, as it well might, under *Nott and Wife* v. *Stoddard*, 38 Vt. 25.

The exception to permitting the plaintiff to testify in chief to the conversation in the drug-store, because he sought the interview for the purpose of entrapping the defendant into a slander, was premature, as the testimony tending to show that was not elicited till the plaintiff's cross-examination. The testimony, therefore, as against that exception, came into the case properly in the first instance; and if the court

did not deal with it properly after that purpose appeared, then was the time to take advantage of it; but as no such advantage was sought to be taken, unless it was by excepting to the part of charge that was in compliance with the defendant's request, the question is not available.

The claim that the testimony of the plaintiff as to the extent of the circulation of the slander was inadmissible because he did not fulfill his offer to show that the circulation was without participation on his part, is based upon the fact that he testified that he made inquiries of several persons at different places, to find evidence that the defendant had circulated the slander, but could find none, and that in making the inquiries he himself talked about the matter. We cannot say that this shows a non-compliance with the offer. It does not appear what he said, and it cannot be affirmed that he could say nothing about the matter without participating in the circulation.

The defendant moved for a verdict on several grounds, the only one now relied upon being, that the words referred only to the personal relations between the plaintiff and the defendant, and to the treatment that each had received from the other, and were so understood by the hearers, and being so understood, are not actionable.

But if it was competent to show how the hearers understood the words, their understanding was not conclusive, but was only for consideration by the jury, whose province it was to determine their meaning. *Knapp* v. *Fuller*, 55 Vt. 311; *Smith* v. *Miles*, 15 Vt. 245.

*Judgment affirmed.*