585 A.2d 1022

**Dennis YETTER, Appellant,**

v.

**WARD TRUCKING CORPORATION, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 13, 1990.

Filed Jan. 18, 1991.

468

Mark F. Lovecchio, Williamsport, for appellant.

Michael J. Soltis, White Plains, N.Y., for appellee.

Before MONTEMURO, TAMILIA and HOFFMAN, JJ.

MONTEMURO, Judge:

Appellant, Dennis Yetter, appeals from an order granting preliminary objections in favor of appellee, Ward Trucking Company, for failure to state a cause of action in wrongful discharge and defamation. Appellant raises two issues on appeal: (1) whether Pennsylvania should recognize a cause of action for defamation based upon compelled self-publication of the defamatory statement; and (2) whether Pennsylvania recognizes a cause of action for wrongful discharge based on specific intent to harm the employee.[1] We affirm the dismissal of the complaint, as we agree with the trial court that appellant has failed to state a cause of action for wrongful discharge under Pennsylvania law and that appellant has not made out a cause of action in defamation.

■ In reviewing the grant of preliminary objections for failure to state a cause of action, we must accept as true the facts set forth in the complaint, as well as all reasonable inferences deducible therefrom, and determine whether the facts as pleaded state an actionable claim under the theories alleged. *Elia v. Erie Insurance Exchange,* 398 Pa.Super. 433, 581 A.2d 209 (1990).

Appellant's count in defamation rests on the communication by *appellant* of statements made by appellee in discharging appellant. The allegedly defamatory statements were communicated to appellant in a letter written by an employee of appellee, appellant's immediate supervisor, explaining the reasons for appellant's termination:

You were terminated from your position with Ward Trucking because of your very poor employment record. Your record includes engaging in incidents of poor work performance, failing to give a conscientious effort to your

1. On appeal, appellant does not challenge the trial court's dismissal of a second count for wrongful discharge based the employer's violation of appellant's constitutional right to freedom of speech.

position, harassing and coercing another employee, maligning the company and demonstrating a poor attitude, among other things.

Complaint, Exh. "A". While there are no claims that appellee published the statements to any person other than appellant, appellant alleges that at the time appellee made the statements to appellant, "it was foreseeable to the Defendant [appellee] that the Plaintiff would be compelled to publish said statements to a third person such as a family member or a prospective employer," Complaint, para. 27. Appellant further avers that he did indeed "publish" the statements to his wife, other relatives and prospective employers during interviews. Compl. para. 28. Relying on 42 Pa.C.S.A. § 8343, the trial court held that appellant failed to make out a cause of action in defamation because Pennsylvania law requires the plaintiff to prove publication by the defendant.

Section 8343 in pertinent part states:

§ 8343. **Burden of proof**

(a) **Burden of plaintiff.**—In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

(1) The defamatory character of the communication.

(2) Its publication by the defendant....

\* \* \* \* \* \*

42 Pa.C.S.A. § 8343(a). We have found no cases within our jurisdiction which consider whether publication of the defamatory statement by the defendant to the defamed party, followed by "compelled" publication by the defamed person to a third party, satisfies the statutory mandate of "publication by the defendant."

Relying on cases from other jurisdictions and the Restatement (Second) of Torts, § 577, appellant urges us to hold that the publication requirement is met where the defendant makes the defamatory statement to the plaintiff who later is compelled to communicate the defamatory matter to a third party, and it was foreseeable to the defendant that the

plaintiff would be compelled to publish the matter. Appellee responds that the wording of § 8343(a)(2) is clear and unambiguous, and the plain meaning of the text requires that the publication must be by the defendant. Although we do not read § 8434(a)(2) as prohibiting a claim of defamation based on compelled self-publication, we have carefully reviewed Pennsylvania law on defamation and under the particular circumstances posed by this case, we decline to adopt appellant's novel cause of action.

 Consistent with a policy favoring private resolution of disputes between employers and employees, Pennsylvania law recognizes the absolute privilege of employers to publish defamatory matter in notices of employee termination. *Sobel v. Wingard*, 366 Pa.Super. 482, 531 A.2d 520, 522 (1987); *Agriss v. Roadway Express, Inc.*, 334 Pa.Super. 295, 483 A.2d 456 (1984); *DeLuca v. Reader*, 227 Pa.Super. 392, 323 A.2d 309 (1974). Thus, a letter articulating the reasons for an employee's termination which is published only to the employee " 'may not be made the subject of an action in libel, regardless of whether the allegations of cause are true or false and regardless of the actual motive behind the dismissal.' " *Agriss, supra*, 334 Pa.Super. at 310, 483 A.2d at 464, *quoting DeLuca, supra*, 227 Pa.Super. at 399–400, 323 A.2d at 313. The purpose of the absolute privilege is to encourage the employer's communication to the employee of the reasons for discharge by eliminating the risk that the employer will possibly be subject to liability for defamation. Where the privilege is abused by the employer's publication of the defamatory material to unauthorized parties, the employer is no longer immune from liability. *Agriss, supra*, 334 Pa.Super. at 309, 483 A.2d at 463. In this case, there are no allegations that appellee communicated the contents of the letter to anyone other than appellant.

 Appellant's proposed cause of action in defamation based on a theory of compelled self-publication counters the employer's absolute privilege to publish defamatory matter to the employee regardless of the occasion or the employ-

er's motive. To allow liability to attach in those instances where it is foreseeable that a discharged employee may repeat the defamatory material to a prospective employer during a job interview would, in effect, defeat the employer's privilege, as it is highly likely that a discharged employee will be seeking other employment.

The caselaw from other jurisdictions cited by appellant recognizes a qualified or conditional privilege, as opposed to an absolute privilege, of employers to publish to employees the reasons for their discharge. Unlike the absolute privilege recognized in Pennsylvania, a qualified privilege may be overcome by a showing that the contents of the letter were false and the publication was motivated by express malice. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1346 (Colo.1988); *Neighbors v. Kirksville College of Osteopathic Medicine*, 694 S.W.2d 822 (Mo.Ct.App.1985); *Lewis v. Equitable Life Assurance Society*, 389 N.W.2d 876 (Minn.1986); *Grist v. Upjohn*, 16 Mich.App. 452, 168 N.W.2d 389 (1969); *Colonial Stores, Inc. v. Barrett*, 73 Ga.App. 839, 38 S.E.2d 306 (1946). Because of this significant difference between Pennsylvania law and the law from these other jurisdictions, we do not find these cases persuasive. While we appreciate the employee's interest in truthful communication in the context of the employee's termination, we find that appellant's position is at odds with the law of this Commonwealth regarding the employer's absolute privilege. We hold that where the defamation action rests on the publication of an employee termination letter by the employer to the employee only, the requirement that the defamatory matter be published by the defendant is not met through proof of compelled self-publication. We express no view as to whether under a different set of circumstances, compelled self-publication of the defamatory material by the defamed person, rather than by the defendant, to a third party will suffice.

Appellant's cause of action for wrongful discharge is based on discharge with the specific intent to harm the employee. Appellant finds support for his specific intent to

harm theory in *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974) and several Superior Court cases interpreting *Geary*. Appellee responds that Pennsylvania law does not recognize a cause of action for wrongful discharge based on specific intent to injure.

 It is well-established that in Pennsylvania an at-will employee may be terminated for good reason, bad reason, or no reason at all. *Hershberger v. Jersey Shore Steel Co.*, 394 Pa.Super. 363, 575 A.2d 944, 946 (1990). Our supreme court has recently stated:

> It should be noted that, as general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy.

*Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346, 348 (1990), *citing Clay v. Advanced Computer Applications*, 522 Pa. 86, 88–90, 559 A.2d 917, 918 (1989); *See also Hershberger, supra.* Although the court in *Geary, supra* did consider and reject the plaintiff's cause of action for wrongful discharge based on specific intent to harm, the court stated that "[w]e hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge." 456 Pa. at 184–85, 319 A.2d at 180. Although in several cases this Court has interpreted *Geary* as recognizing a cause of action under the specific intent to harm theory, *see Mudd v. Hoffman Homes For Youth*, 374 Pa.Super. 522, 543 A.2d 1092, 1096 (1988); *Tourville v. Inter–Ocean Insurance Co.*, 353 Pa.Super. 53, 508 A.2d 1263 (1986), *allocatur denied* 514 Pa. 619, 521 A.2d 933 (1986); *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 318 (1986), in at least one case, this Court has

interpreted *Geary* as viewing a discharge motivated by specific intent to harm as an example of when a discharge violates public policy. *Yaindl v. Ingersoll–Rand Co. Standard Pump–Aldrich Div.*, 281 Pa.Super. 560, 422 A.2d 611 (1980). We note that all of these cases were decided prior to the *Clay* and *Paul* cases, which clearly hold that the only exception to the employment at-will doctrine is where the discharge violates clear mandates of public policy. Thus, to survive a challenge of failure to state a cause of action, the complaint must establish the violation of a public policy.

The public policy exception is limited to terminations of employment that have violated significant and recognized public policies:

> [T]he extent to which public policy limits an employer's control over his business must be determined on a case by case basis.... An essential element in permitting a cause of action for wrongful discharge is a finding of a violation of a clearly defined mandate of public policy which "strikes at the heart of a citizen's social right, duties and responsibilities."

*Hineline v. Stroudsburg Electric Supply Co., Inc.*, 384 Pa.Super. 537, 559 A.2d 566 (1989), *allocatur denied* 524 Pa. 628, 574 A.2d 70 (citations omitted). In *Cisco v. United Parcel Services, Inc.*, 328 Pa.Super. 300, 306, 476 A.2d 1340, 1343 (1984), this Court noted that:

> "The sources of public policy [which may limit the employer's right of discharge] include legislation; administrative rules, regulation, or decision; and judicial decision. In certain instances, a professional code of ethics may contain an expression of public policy.... Absent legislation, the judiciary must define the cause of action in case-by-case determinations.

*Id., citing Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505, 512 (1980). Indeed, in the few cases in which this Court has held that a claim has been stated for wrongful discharge based on the employer's violation of public policy, there existed a statute evidencing a legislative recognition of some public policy. In *Field v. Philadelphia*

*Electric Co.,* 388 Pa.Super. 400, 565 A.2d 1170 (1989), the Court recognized a cause of action for wrongful discharge where the employee was discharged for reporting the employer's violations of the Nuclear Regulatory Commission (NRC) to the NRC. The Court noted that under the federal Energy Reorganization Act, the plaintiff was required to report these violations. The plaintiff's reporting of the NRC violations furthered the "well-recognized, substantiated" public concerns of protecting the health and safety of the public against the dangers of radiation. *Id.,* 388 Pa.Superior Ct. at 420, 565 A.2d at 1180. In *Hunter v. Port Authority of Allegheny Cty.,* 277 Pa.Super. 4, 419 A.2d 631 (1980), the employer refused to allow the plaintiff, who had previously been told he could begin work, to begin employment because of the employee's past felony conviction for assault. In holding that the plaintiff had made out a cause of action for the employer's refusal to employ, the court relied on "the deeply ingrained public policy" against unwarranted stigmatization of former offenders. *Id.,* 277 Pa.Superior Ct. at 13 n. 5, 419 A.2d at 636 n. 5. As evidence of the established public policy, the Court cited a statute which limited the use of the employee's criminal records by employers when making employment decisions, and judicial decisions which recognized the policy of limiting the employer's use of an individual's past criminal record to restrict the employee's right to engage in lawful employment. *Id.,* 277 Pa.Superior Ct. at 9–11, 419 A.2d at 634–35. In *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978), we held that an employee discharged for performing jury duty was entitled to recover for wrongful discharge. In support of its finding that jury service is an important and recognized public policy, the Court relied on a statute which requires our citizens to serve jury duty and the Pennsylvania constitutional provision granting the right of trial by jury. *Id.,* 277 Pa.Superior Ct. at 32–33, 386 A.2d at 120–21.

On the other hand, in *Geary, supra,* our supreme court held that the discharge of an employee for complaining about defective products to management did not state a cause of action for wrongful discharge under the public

policy exception. *See also Yaindl, supra* (discharge for calling to the company's attention defects in the manufacturing of pumps for an overseas company did not violate any stated public policy). In *Hineline, supra,* this Court rejected the employee's claim for wrongful discharge based on the employee's dismantling of his employer's illegal video and audio surveillance equipment. In addition,

> this Court has refused to find that a public policy violation exists where an employee was discharged after complaining about the financially wasteful manner in which his department was run, *Rossi v. Pennsylvania State University,* 340 Pa.Super. 39, 489 A.2d 828 (1985); where an employee was discharged for actively seeking a position with a competitor, *McCartney v. Meadowview Manor, Inc.,* 353 Pa.Super. 34, 36–37, 508 A.2d 1254, 1255 (1986); where relations with those under the employee's supervision had deteriorated irretrievably, *Turner [v. Letterkenny Federal Credit Union,* 351 Pa.Super. 51, 505 A.2d 259 (1985)]*, where an employee was discharged even though he had done the job well, *Betts v. Stroehmann Bros.,* 355 Pa.Super. 195, 512 A.2d 1280 (1986); where false accusations of criminal behavior led to discharge, *Gillespie v. St. Joseph's Univ.,* 355 Pa.Super. 362, 513 A.2d 471 (1986); where an employee claimed that every person had a right to earn a living in a job that he chooses, *Marsh [v. Boyle,* 366 Pa.Super. 1, 530 A.2d 491 (1987)]; where a college president was discharged for insisting on a publicly conducted investigation of illegal activities of member of the Board and a dean of the College, *Rinehimer v. Luzerne County Community College,* 372 Pa.Super. 480, 539 A.2d 1298 (1988).

*Hineline, supra,* 384 Pa.Super. at 541–42, 559 A.2d at 569. *See also Darlington, supra* (no public policy was violated where investigation leading to discharge was heavily slanted against employee, and employee was not given the opportunity to defend against the evidence which was accumulated against him).

Instantly, appellant has failed to point to any statutorily or judicially recognized public policy which was violated by appellee in terminating appellant. In support of the count in wrongful discharge, the Complaint alleges that appellee selectively enforced its company rules against appellant; that appellant's supervisor, Steve Patton, personally disliked and was jealous of appellant, and appellee exaggerated or fabricated numerous incidences of job misconduct by appellant. While appellee's alleged behavior may be reprehensible, the allegations simply do not rise to the level of significant and recognized public policy violations which would support a cognizable cause of action for wrongful discharge. None of the allegations "strike at the heart of the citizen's social right, duties, and responsibilities." Appellant has failed to state a cause of action for wrongful discharge.

For the foregoing reasons, we affirm the order of the trial court dismissing appellant's complaint.

Order affirmed.