**Ira W. RITTER, Plaintiff,**

v.

**PEPSI COLA OPERATING COMPANY OF CHESAPEAKE AND INDIANAPOLIS, Defendant.**

**No. 1:CV–91–0417.**

United States District Court, M.D. Pennsylvania.

Jan. 9, 1992.

---

Marc F. Lovecchio, Lee A. Ciccarelli, Campana and Campana, Williamsport, Pa., for plaintiff.

Harvey Freedenberg, McNees, Wallace & Nurick, Harrisburg, Pa., Richard E. Lieberman, James A. Burns, Jr., Shelly R. Pagac, Ross and Hardies, Chicago, Ill., for defendant.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Plaintiff Ira Ritter filed this action in the Court of Common Pleas for Snyder County, Pennsylvania, alleging breach of contract and defamation. Ritter claims that the circumstances surrounding his resignation from defendant Pepsi Cola Operating Company of Chesapeake and Indianapolis ("Pepsi") violated certain parts of an employee handbook which had been circulated by Pepsi. He contends that the handbook was an enforceable contract which altered his status as an at-will employee. Ritter bases his defamation claim on the compelled self-publication of the circumstances of his resignation. On March 27, 1991, Pepsi removed the action from the state court to this court. Currently before the court is Pepsi's motion for summary judgment based on the arguments that the handbook was not an enforceable contract and that compelled self-publication is not a viable cause of action in this Commonwealth.

### RELEVANT FACTS

For the purposes of disposing of the instant motion, the relevant facts are limited to those concerning 1) the circumstances surrounding the circulation, use and substance of the employee handbook and 2) the compelled self-publication of defamatory statements. In 1989, Pepsi distributed an employee handbook to all of the employees at its Selinsgrove, Pennsylvania facility. This included the plaintiff. The handbook summarizes Pepsi's history and describes the various company policies, practices, rules and benefits. At the end of the employee handbook, on page seventy, it states:

> In receiving this handbook, I realize and understand that this is in no way a contract with the Pepsi-cola Company. The handbook is intended as general guidelines for operation and may be changed at management's discretion upon consultation with the Employee Committee. I have received its contents and accept employment with Pepsi-cola under these circumstances.

Signature and date lines appear directly beneath this paragraph. However, Ritter maintains that he was not aware of this paragraph and there is no evidence indicating that he subscribed his name.

Although Ritter does not recall anyone saying that he should think of the employee handbook as a contract, at least two of his superiors have indicated that they treated the manual as "bible" or "gospel".

Along these lines, Mack Fleming, District Manager, and Joseph Harvey, Operations Manager, both believed that they were required to follow the provisions in the handbook.

Ritter's supervisors believed that he was drinking alcohol while on the job.[1] Because of this, Ritter was told that he could either resign or be discharged. He chose to resign. Pepsi did not disclose the reasons underlying Ritter's resignation to third-parties. However, it was necessary for Ritter himself to state the reasons for his resignation to relatives and prospective employers.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact to be resolved. Fed.R.Civ.P. 56. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. The entire record must be examined in a light most favorable to the non-moving party. *Continental Insurance v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). If there is no genuine issue of material fact, summary judgment may be granted to the party entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a plaintiff may not merely restate the allegations of his complaint. *Farmer v. Carlson*, 685 F.Supp. 1335, 1339 (M.D.Pa.1988). Nor can a plaintiff rely on self-serving conclusions, unsupported by specific facts in the record. *Celotex Corp. v. Catrett*, supra, 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273. A plaintiff must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the plaintiff fails to provide such

evidence, then he is not entitled to a trial and the defendant is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(e).

## DISCUSSION

■ Under Pennsylvania law, wrongful discharge may only be asserted in very limited circumstances. An employee-at-will who is terminated may claim wrongful discharge only when his termination is made with a specific intent to harm or is contrary to public policy. *Tourville v. Inter–Ocean Ins. Co.*, 353 Pa.Super. 53, 55, 508 A.2d 1263, 1265 (1986); *Engstrom v. John Nuveen and Company*, 668 F.Supp. 953, 958 (E.D.Pa.1987); *Geary v. U.S. Steel Corp.*, 456 Pa. 171, 178–83, 319 A.2d 174, 177–80 (1974). Significantly, Ritter does not assert a claim for wrongful discharge. Instead, he maintains that the employee handbook issued by Pepsi is an enforceable contract which transformed the at-will relationship into a contractual relationship.

■ In Pennsylvania, there is a very strong presumption of at-will employment relationships and the level of proof required to overcome this presumption is arduous.

> The *sine qua non* of the presumption is that except in rare circumstances, discharges will not be reviewed in a judicial forum. The presumption may be overcome by express contract, implied in-fact contract (that is, the surrounding circumstances of the hiring may indicate that the parties did not intend to be at-will), and additional consideration passing from the employer (that is, if the employee bestows a legally sufficient benefit or incurs a sufficient detriment for the benefit of the employer beyond the services for which he was hired, a court may infer that the parties intended to overcome the at-will presumption).

*Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 95, 545 A.2d 334, 336 (1988) (emphasis in original).

---

1. For the purposes of determining this motion, the question of whether or not Ritter was in fact drinking alcohol while on the job is of no moment.

That the at-will presumption cannot be easily overcome is emphasized in several opinions. "The burden of proof here is very great," *DiBonaventura v. Consolidated Rail Corp.*, 372 Pa.Super. 420, 424, 539 A.2d 865, 867 (1988), and only "clear evidence that the parties intended to contract for a definite period" will set aside the presumption. *Greene [v. Oliver Realty, Inc.,* 363 Pa.Super. 534, 551, 526 A.2d 1192, 1200, *allocatur denied,* 517 Pa. 607, 536 A.2d 1331 (1987)]. "[G]reat clarity is necessary to contract away the at-will presumption." *Scott v. Extracorporeal, Inc.,* 376 Pa.Super. 90, 99, 545 A.2d 334, 338 (1988). *Veno v. Meredith,* 357 Pa.Super. 85, 99, 515 A.2d 571, 578 (1986), elaborated on that theme: "[T]he modification of an 'at-will' relationship to one that can never be severed without 'just cause' is such a substantial modification that a very clear statement of an intention to so modify is required." *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 660 (3d Cir.1990).

Whether the plaintiff has produced sufficient evidence to overcome the at-will presumption is a question of interpretation normally left to the court. *Id.*

Notwithstanding the level of proof required to supplant the at-will presumption, "[a] handbook is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule." *Scott v. Extracorporeal, Inc., supra,* 376 Pa.Super. at 97, 545 A.2d at 337; *DiBonaventura v. Consolidated Rail Corp.,* 372 Pa.Super. 420, 426, 539 A.2d 865, 868 (1988); *Reilly v. Stroehmann Bros. Co.,* 367 Pa.Super. 411, 419–20, 532 A.2d 1212, 1215–16 (1987). In all of these cases the courts looked to the language of the handbook to determine whether a reasonable employee would understand the provisions to transform his at-will employment into a contractual employment relationship. "A handbook, to be construed as a contract, must contain unequivocal provisions that the employer intended to be bound by it and, in fact, renounced the principle of at-will employment." *Id.* at 416, 532 A.2d at 1214.

■ In the instant case, the language of the contract could not be more clear. As quoted above, it states:

In receiving this handbook, I realize and understand that *this is in no way a contract with the Pepsi-cola Company.* The handbook is intended as general guidelines for operation and may be changed at management's discretion upon consultation with the Employee Committee. I have received its contents and accept employment with Pepsi-coal under these circumstances.

(emphasis added). As a matter of law, no reasonable employee could construe the terms of this handbook as an intention on his employer's part to transform his at-will employment.

Plaintiff's only remaining claim is defamation. Significantly, Pepsi did not disclose the reasons underlying Ritter's resignation to third parties. Nevertheless, it was necessary for Ritter himself to state the reasons for his resignation to relatives and prospective employers.

■ Pennsylvania, however, does not recognize a defamation cause of action based on compelled self-publication by an employee under these circumstances. In *Yetter v. Ward Trucking Corp.*, 401 Pa.Super. 467, 585 A.2d 1022 (1991), the court held "that where the defamation action rests on the publication of an employee termination letter by the employer to the employee only, the requirement that the defamatory matter be published by the defendant is not met through proof of compelled self-publication." *Id.* at 472, 585 A.2d at 1025. Although plaintiff attempts to distinguish *Yetter* on the grounds that *Yetter* involved a termination "letter", whereas the instant case involves only oral communication, the manner of publication is of no legal consequence in a defamation case.

## ORDER

For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:

1. The motion of defendant Pepsi Cola Operating Company of Chesapeake and Indianapolis (record document # 16, filed December 2, 1991) for summary judgment is granted.

2. The Clerk of Court is directed to enter judgment in favor of the defendant and against the plaintiff and to close the case file.