## Stine v. Walter

*Clyde Vedder,* for plaintiff.
*Peter Solymos,* for defendant.

KENNEDY, *J.,* March 13, 1996—This matter comes before the court on defendant's preliminary objections to plaintiff's complaint, specifically Counts II and III, seeking dismissal of those counts for failure to state a cause of action.

On November 20, 1995, plaintiff filed suit against defendant as a result of receipt of a letter dated June 10, 1994. (See exhibit A.) Plaintiff alleges that the defendant was the writer of the letter. Said correspondence appears to be an official document from the Department of State of the Commonwealth of Pennsylvania. The letter informs plaintiff that she has been listed as being sexually active with a person known to have acquired immune deficiency syndrome. In addition to advising plaintiff of her responsibility to seek medical attention to verify her health status, the letter also advised that plaintiff was *obligated* to notify persons with whom she had been sexually active during the last five years. Plaintiff told third parties of her situation before she learned that the letter was a fake. Plaintiff filed suit under the following theories:

"Count I. Intentional infliction of emotional distress and outrageous conduct causing severe emotional distress.

"Count II. Defamation.

"Count III. Invasion of privacy.

"Count IV. Fraud/fraudulent misrepresentation.

"Count V. Punitive damages."

Plaintiff admits in her pleadings that she republished the defamatory letter to third parties.

The basis for the objections is that under 42 Pa.C.S. §8343(a) publication of defamatory material must be done by the defendant. Self-publication has not been recognized in Pennsylvania, heretofore, as satisfying

the statutory requirements. Both parties provided briefs in support of their positions, and oral argument was heard on February 27, 1996. For the following reason, the court dismisses defendant's preliminary objections but instructs plaintiff to file a more specific pleading as to Count III.

## LEGAL ANALYSIS

Preliminarily, the defendant is correct in her assertion that Pennsylvania has not recognized a defamation cause of action based on self-publication. However, a review of recent Pennsylvania case law in this area persuades the court to conclude that, under the proper set of circumstances, self-publication may be recognized as sufficient publication in a suit for defamation. *Yetter v. Ward Trucking Corp.,* 401 Pa. Super. 467, 585 A.2d 1022 (1991), *appeal denied,* 529 Pa. 623, 600 A.2d 539 (1991); *Ritter v. Pepsi Cola Operating Co.,* 785 F. Supp. 61 (M.D. Pa. 1992). We believe the proper set of circumstances is now before this court.

Under current Pennsylvania law, the plaintiff in a defamation action has the burden of proving: (1) defamatory character of communication; (2) its publication by defendant; (3) its application to plaintiff; (4) understanding by recipient of its defamatory meaning; and (5) understanding by recipient of it as intended to be applied to plaintiff. *Weinstein v. Bullick,* 827 F. Supp. 1193 (E.D. Pa. 1993). Since the gist of an action for libel or slander is injury to the plaintiff's reputation, publication—that is communication of the defamatory matter to one other than the person defamed—is an essential element of actionable defamation. 62 A.L.R.4th 620 §2(a). The general rule is that the originator of the statement, or in this case the letter, cannot be held liable for the plaintiff's action in repeating the statement or letter to one or more third parties. However, there are exceptions to this rule under certain circumstances.

The facts and circumstances of each case must be examined carefully to determine if an exception applies.

In *Yetter v. Ward Trucking Corp., supra,* a former employee brought action against the employer for alleged wrongful discharge and defamation. The lower court had granted preliminary objections in favor of the defendant, for plaintiff's failure to state a cause of action in both the wrongful discharge and defamation counts. Plaintiff appealed, relying on cases from other jurisdictions and the Restatement (Second) of Torts §577, urging the court to hold that the publication requirement is met where the defendant makes the defamatory statement to the plaintiff who later is *compelled* to communicate the defamatory matter to a third party, and it was foreseeable to the defendant that the plaintiff would be compelled to publish the matter. Defendant responded that the wording of section 8343(a)(2) was clear and unambiguous and the plain meaning of the text requires that the publication must be by the defendant. The Superior Court agreed with the defendant but made these instructive comments:

"Although we do not read section 8343(a)(2) as prohibiting a claim of defamation based on compelled self-publication, we have carefully reviewed Pennsylvania law on defamation and *under the particular circumstances posed by this case,* we decline to adopt appellant's novel cause of action." *Yetter v. Ward Trucking Corp., supra* at 471, 585 A.2d at 1024. (emphasis added)

The *Yetter* court went on to explain that Pennsylvania recognizes the absolute privilege of employers to publish defamatory matter in notices of employee termination. However, the employer can abuse the privilege by publication of the defamatory material to unauthorized third parties. The purpose of the absolute privilege is to encourage the employer's communication to the employee of the reasons for discharge by eliminating the risk that the employer will possibly be subject to liability

or defamation. *Id.* In *Yetter,* the plaintiff published the information contained in a termination letter, which he claimed was defamatory, to his wife, other relatives and prospective employers during interviews. If the court allowed liability to attach to those instances where it was foreseeable that a discharged employee would repeat the defamatory reasons for his discharge to a prospective employer during a job interview, it would totally defeat the employer's absolute privilege to communicate to the employee the reasons for his discharge. Under these circumstances, the court really had little choice but to hold that where the defamatory action rests on the publication of an employee termination letter by the employer to the employee only, the requirement that the defamatory matter be published by the defendant is not met through proof of compelled self-publication. *Id.* at 472, 585 A.2d at 1025.

Of considerable import is the next statement made by the court after its holding:

"We express no view as to whether under a different set of circumstances, compelled self-publication of the defamatory material by the defamed person, rather than by the defendant, to a third party will suffice." *Id.*

In *Ritter v. Pepsi Cola Operating Co., supra,* the court was faced with a similar employee/employer termination/defamation question. The only differences in *Ritter* were that the employee resigned, and the supposed defamatory reasons causing his resignation were orally communicated to him rather than through a letter. Again, the court refused to recognize a defamation cause of action based on compelled self-publication by an employee *under those circumstances. Ritter v. Pepsi Cola Operating Co., supra* at 64. Although the *Ritter* court did not address the issue of absolute privilege by the employer, since Pennsylvania law clearly applied.

It is reasonable in a defamation action under Pennsylvania law that when there is conflict between a well-

established absolute privilege and a yet-to-be established self-publication theory, the courts will fashion a holding that does not undermine the privilege. However, that tension does not exist in the case before this court. There is no absolute, or even conditional privilege, which allows defendant to convey this allegedly defamatory letter to the plaintiff with impunity.

In the Restatement (Second) of Torts §583, there is considerable discussion of other absolute privileges. For example, *consent* by the defamed person to publication is considered an absolute privilege and is a complete defense to an action for defamation. However, the next section reads as follows and seems applicable to this case.

"Section 584 *Inquiry and investigation*

"An honest inquiry or investigation by the person defamed to ascertain the existence, source, content or meaning of a defamatory publication, is not a defense to an action for its republication by the defamer."

The comment to the section explains that this rule is applicable only to the publication of defamatory matter at the request or procurement of a plaintiff who acts honestly for the purpose of ascertaining the existence, source, content or meaning of a prior defamatory publication. The person defamed may procure the republication of the defamatory matter either personally or through an agent. To come within this rule, the defamatory matter must be repeated. The mere acknowledgment of a previous publication is not a republication.

The sufficiency of self-publication in a defamation cause of action is not a new theory. Cases in other jurisdictions as far back as 1850 have recognized the viability of self-publication. As of 1988, approximately 11 states had recognized this legal theory. 62 A.L.R. 4th 616 §4.

There are a number of reasons courts have justified the exception. When publication by plaintiff is fore-

seeable—that is, defendant knew or had reason to know that the plaintiff would repeat the statements to a third person—the exception may apply.

In *McKinney v. County of Santa Clara,* 110 Cal. App. 3d 787, 168 Cal. Rptr. 89 1st Dist. 1980, plaintiff's supervisor in the county sheriff's department made allegedly defamatory statements in reviewing plaintiff's job performance. These statements formed the basis for plaintiff's termination as a probationary deputy sheriff. Plaintiff then republished the defamation to other police departments where plaintiff applied to work. He asserted the republication by him was not voluntary but rather, was required of him is a practical matter by police agencies to whom he applied. Of note is the fact that the employer in *McKinney* did not enjoy the absolute privilege that Pennsylvania affords employers.

The *McKinney* court found that the foreseeability was the result of plaintiff's strong compulsion to disclose the contents of the defamatory statement, to third parties. Where the circumstances that create the strong compulsion are known to the originator of the defamatory statement at the time he/she communicates it to the person defamed, there is a strong causal link between the actions of the originator and the damage caused by the republication.

In *Hedgpeth v. Coleman,* 183 N.C. 309, 11 S.E. 517 (1922), republication was foreseeable because the act of disclosure by the plaintiff arose from necessity. In *Hedgpeth,* the defendant had written a letter to a teenage boy accusing him of having burglarized his storehouse and safes and threatening him with prosecution and imprisonment. Of necessity, the youth sought advice from others about his situation. The court stated that necessity is not predicated exclusively on conditions which are physical, but may be induced by fear which then is akin to duress. Thus, the court concluded that

a threat may operate so powerfully upon the mind of an immature boy as to amount to coercion; and, when an act is done through coercion, it is not voluntary.

If foreseeability is shown, it matters little who the particular parties are to whom the plaintiff republishes the defamatory matter. In *Hedgpeth,* the teenager showed the letter to his brother and to another man, and his brother showed it to his father. In *McKinney,* plaintiff informed prospective employers. In *Crane v. Darling,* 71 Vt. 294, 44 A. 359 (1899), the plaintiff informed other people whom he thought might have some knowledge and could help in his investigation of slanderous allegations.

The *Crane* court affirmed a judgment for the plaintiff in a slander action, where the plaintiff testified that in making inquiries of several persons to find evidence that defendant had circulated the slander, the plaintiff himself had talked about the matter. While the slanderous statements of defendant to plaintiff were found to have been widely circulated in the community, there was nothing to show that defendant had anything to do with their circulation. The argument and charge to the jury was directed to causation and the proposition "that the defendant must have been the occasion of the circulation by others in some assignable way other than by speaking the works in the first instance. . . ." *Crane v. Darling, supra,* 359 A. at 361. Although the plaintiff could not show that the circulation was without participation on his part, conversely it could not be shown that plaintiff's inquiries had to have resulted in the circulation of the slander. The court found a sufficient causal link between defendant and the injury to plaintiff.

Turning to the facts now before this court, it is fair to say that few circumstances come to mind that could present a more compelling argument for recognition

of self-publication as satisfying the publication requirement in this case.

In determining a demurrer, the court must deem the party who filed the demurrer to have admitted all relevant facts sufficiently pleaded in a preceding pleading, and all inferences fairly deducible therefrom, but not conclusions of law or unjustified inferences. *Goodrich-Amram* 2d §1017(b):28.

Applying these standards to plaintiff's pleading, the court finds that plaintiff received a letter that appeared to be an official correspondence from a state agency advising plaintiff of her exposure to the HIV virus. The letter advised plaintiff to consult a physician to ascertain her health status. Further, it informed plaintiff that she was obligated to advise anyone with whom she had been intimate during the last five years of their possible exposure. For purposes of this motion defendant admits the entire letter was false as alleged by plaintiff, who then took certain steps to comply with the letter and to investigate its source. In the process, she republished the defamatory material.

It is common knowledge that exposure to the HIV virus can be life threatening. In today's society such exposure brings with it considerable social stigma and fear. If an individual actually carries the HIV virus, the impact on his or her mental, emotional, physical and even financial well-being can be disastrous. Is it not foreseeable that a person who learns that he/she has been exposed to the virus would seek medical attention as well as advice and solace from family and friends? In addition, if the person believes he/she has some legal obligation to advise others, is it not foreseeable that the victim will do so? The answers to both questions are obviously in the affirmative. Thus, a defamer who sets in motion such a foreseeable chain of events cannot then claim lack of causality because,

after initiating the harm, he/she stands back and watches the results of their duplicity.

Based on the circumstances of this case, and in light of the long-standing recognition in other jurisdictions of compelled self-publication, this court holds that plaintiff's self-publication satisfies the publication prong of a cause of action for defamation. Defendant's preliminary objection will be dismissed.

## INVASION OF PRIVACY

In light of the court's determination that self-publication is viable under these circumstances, defendant's preliminary objections to Count IV of plaintiff's complaint, alleging invasion of privacy will be dismissed. However, the court recognizes that the tort of invasion of privacy is actually comprised of four separate torts which are: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to the private life of another; and (4) publicity that unreasonably places another in false light before the public. Plaintiff may maintain her action for invasion of privacy upon any or all grounds available to her. However, only one recovery for damages is available, even if all four are alleged and proved.

The plaintiff is instructed to amend her complaint to allege with specificity which tort(s) under the invasion of privacy theory plaintiff seeks to prove.

## ORDER

The defendant's preliminary objections are overruled. The defendant is directed to file an answer to the plaintiff's complaint within 20 days of this order.

The defendant's preliminary objections to Count II are overruled. The plaintiff is directed to amend her complaint to allege with specificity which tort(s) under the invasion of privacy theory plaintiff seeks to prove.

Notice of this order and opinion should be directed to the relevant parties.

---

EXHIBIT A

June 10, 1994

Victoria L. Stine
4040 Druck Valley Road
York, PA 17402
Dear Ms. Stine:

You are hereby being notified that you may have been exposed to the HIV virus (AIDS). Your name has been given as a [sic] involved contact of a person who has acquired immune deficiency syndrome. You have been listed as being sexually active with this person. It is your responsibility to seek medical attention to verify your own health status. As a resident of the Commonwealth of Pennsylvania you are obligated to notify persons with whom you have been sexually active within the past five years, they should also be advised that their contacts may have been exposed.

If you require more information on the HIV virus your local Department of Health, 1750 N. George St., York, PA 17404 may be of assistance.

Sincerely,
/s/Thomas P. Foley
Thomas P. Foley