Lawrence STRANGE, et al., Plaintiffs,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, et al., Defendants.

Civ. A. No. 93–6585.

United States District Court, E.D. Pennsylvania.

Sept. 26, 1994.

Joseph M. Toddy, Adam M. Soll, Zarwin and Baum, P.C., Philadelphia, for plaintiffs.

Stanley B. Edelstein, Jacoby, Donner & Jacoby, P.C., Philadelphia, Joel W. Rice, Fox and Grove, Chartered, Chicago, IL, for· defendants.

## *MEMORANDUM*

LOWELL A. REED, Jr., District Judge.

Currently before me is the motion of defendants to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Document No. 4) This court has jurisdiction pursuant to 28 U.S.C.A. § 1331 (West 1993) as plaintiffs have stated causes of action under 29 U.S.C.A. §§ 621–34 (West 1985 & Supp.1994) and 42 U.S.C.A. § 3604 (West Supp.1994), and pursuant to 28 U.S.C.A. § 1332 (West 1993) as the parties are of diverse citizenship and the amount in controversy exceeds $50,000 exclusive of interest and costs for each plaintiff.

For the reasons discussed below, the motion of defendants to dismiss will be granted as to Counts III, IV, and VIII, and denied as to Counts I, II, and V. In addition, the motion of defendants to dismiss will be denied without prejudice as to Counts VI and VII; plaintiffs will be given leave to amend their complaint with regard to Counts VI and VII and will also be given leave to amend in order to include a new claim of defamation. Finally, the claim of plaintiff Samuel Vassallo [1] under Count I will be stayed until November 4, 1994.

## I. FACTUAL BACKGROUND [2]

Plaintiffs are Lawrence Strange, Howard Silver, Warren Pine, Edward Sheehan, and Samuel Vassallo, five former Nationwide insurance agents. The defendants are Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide General Insurance Company, and Nationwide Property and Casualty Insurance Company (hereinafter collectively referred to as "Nationwide"). Plaintiffs brought this action against Nationwide after their agency contracts with Nationwide were terminated. At the time their agency contracts were terminated, all five plaintiffs were over the age of forty (40). Prior to filing this action, each plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") charging Nationwide with violation of the Age Discrimination in Employment Act, 29 U.S.C.A. §§ 621–34 ·(West 1985 & Supp.1994) ("ADEA"). The complaints of Lawrence Strange, Howard Silver, Warren Pine, and Edward Sheehan were referred to the EEOC for investigation; the EEOC dismissed their

---

**1.** The parties appear to have incorrectly spelled Samuel Vassallo's name as "Samuel Vassalo" on all court documents. This memorandum will use the former spelling, drawn from plaintiff Vassallo's signature on his "Agent's Agreement." Defendants' motion to dismiss ("Motion"), Exhibit A.

**2.** The following facts are based on plaintiffs' well-pleaded factual allegations, construed in the light most favorable to the plaintiffs, as required when considering a motion to dismiss. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990).

complaints, concluding that they were independent contractors and not employees within the meaning of the ADEA. The EEOC and PHRC complaints of plaintiff Samuel Vassallo are still pending.

 After filing their complaints with the EEOC and PHRC, the plaintiffs filed a complaint in this court alleging that Nationwide discriminated against them on the basis of age when Nationwide terminated their employment. The plaintiffs further allege that Nationwide engaged in discrimination in the writing of insurance policies on the basis of age, sex, race, color, financial ability, and geographic location[3] in violation of state and federal law. This discrimination had the effect of denying plaintiffs commissions and other monetary benefits and eventually resulted in their termination of employment. In addition, the plaintiffs state that their terminations (1) were procedurally defective due to lack of notice and opportunity for rehabilitation, (2) violated their contracts with Nationwide, (3) violated public policy, and (4) gave rise to claims for fraudulent misrepresentation and defamation.[4]

## II. DISCUSSION

 In determining whether or not to grant a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, I am required to accept "as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990). Dismissal is allowed for failure to state a claim only in "those instances where it is certain that no relief could be granted under any set of facts that could be proved." *Id.*

### A. Count I—Age Discrimination

In Count I of their complaint, plaintiffs state that Nationwide discriminated against them on the basis of age in violation of the ADEA when Nationwide terminated their employment. Nationwide argues that the ADEA only protects persons who are "employees" and that the plaintiffs were not employees but independent contractors. Nationwide also argues that plaintiff Samuel Vassallo's ADEA claim is premature.

### 1. Status of Plaintiffs Under the ADEA

 Nationwide correctly states, and plaintiffs do not contest, that the ADEA protects only employees and not independent contractors. 29 U.S.C.A. § 623(a) (West 1985); *EEOC v. Zippo Mfg. Co.*, 713 F.2d 32, 35 (3d Cir.1983). In order to determine whether a person is an employee or an independent contractor for the purposes of the ADEA, the Court of Appeals for the Third Circuit has adopted a so-called "hybrid test," combining the traditional test for common-law agency with a modern economic realities test. *Zippo*, 713 F.2d at 38.[5] It is unneces-

---

3. Discrimination based on geographic location is generally known as "red lining." *See NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 290 (7th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 2335, 124 L.Ed.2d 247 (1993).

4. Count I of plaintiffs' complaint alleges federal age discrimination, Count II violation of the federal Fair Housing Act, Counts III and IV violations of Pennsylvania insurance law, and Counts V through VIII Pennsylvania common law claims for wrongful discharge, fraudulent misrepresentation, breach of contract, and defamation.

The parties both assume that Pennsylvania law applies to plaintiffs' state law claims, and their assumption is correct. Federal courts must apply the choice of law rules of the states in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Pennsylvania has adopted a choice of law methodology which combines contacts

analysis and interest analysis. *Carrick v. Zurick–American Ins. Group*, 14 F.3d 907, 909–10 (3d Cir.1994); *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). Given that all of the plaintiffs are residents of Pennsylvania and that the conduct complained of primarily occurred in Pennsylvania and primarily affected Pennsylvania residents, I find that Pennsylvania law applies.

5. The continued viability of this hybrid test is in doubt, however, because the Supreme Court of the United States recently stated that as a general rule the common-law agency test should be used to define the term "employee" for the purposes of statutes which do not helpfully define the term. *Nationwide Mut. Ins. Co. v. Darden*, — U.S. —, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). While the *Darden* case involved ERISA, this general rule would appear also to extend to ADEA cases. *See Stouch v. Brothers of Order*, 836 F.Supp. 1134, 1139 (E.D.Pa.1993).

sary for the purposes of this motion, however, to apply any test. The plaintiffs have alleged in their complaint that they were "employed" with Nationwide and that their "employment" was terminated. Complaint, at ¶¶ 16–22. Under the standard of review for a motion to dismiss, I must accept plaintiffs' factual allegations that they were "employed" by Nationwide as true, and therefore, plaintiffs' complaint adequately states a claim under the ADEA.

### 2. Timeliness of Plaintiff Vassallo's ADEA Claim

■ Plaintiffs state in their complaint that plaintiff Samuel Vassallo filed his complaints with the EEOC and the PHRC on or about November 22, 1993.[6] Complaint, at ¶ 31. The plaintiffs filed their complaint in this court on December 8, 1993, sixteen days after Mr. Vassallo filed his EEOC and PHRC complaints.

The ADEA provides that "[n]o civil action may be commenced by an individual . . . until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." 29 U.S.C.A. § 626(d) (West 1985) ("Section 626(d)"). The ADEA further provides that "no suit may be brought . . . before the expiration of sixty days after proceedings have been commenced under the [applicable, if any] State law." 29 U.S.C.A. § 633(b) (West 1985) ("Section 633(b)").

Since plaintiff Vassallo's ADEA claim is untimely under both of these sections, the question then becomes how this court should handle his ADEA claim. With regard to Section 633(b), the Court of Appeals for the Third Circuit has held that when a plaintiff does not comply with that provision's requirements, her suit must be stayed until

compliance has been achieved. *Smith v. Jos. Schlitz Brewing Co.*, 604 F.2d 220 (3d Cir. 1979). The Court of Appeals for the Third Circuit has not addressed a violation of Section 626(d). The Court of Appeals for the Second Circuit, however, has held that an ADEA claim that is barred by Section 626(d) should be stayed pending expiration of the statutory 60–day waiting period. *Dalessandro v. Monk*, 864 F.2d 6, 9 (2d Cir.1988).[7]

The courts in *Smith* and *Dalessandro* rested their decisions on *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). In *Evans*, the Supreme Court of the United States held that when a plaintiff violated Section 633(b), the proper remedy was not dismissal but instead suspension of the plaintiff's claim pending satisfaction of Section 633(b)'s requirements. *See* 441 U.S. at 765 n. 13, 99 S.Ct. at 2076; *see also Dalessandro*, 864 F.2d at 9; *Smith*, 604 F.2d at 220–21.

Following the holdings in *Evans*, *Smith* and *Dalessandro*, I will stay plaintiff Vassallo's ADEA claim in order to allow the statutory waiting period to expire. Since more than sixty days has passed from when plaintiff Vassallo filed his EEOC and PHRC complaints, I will stay his ADEA claim from the date of this memorandum and order for 43 days, the amount of the waiting period that had not passed when the plaintiffs' filed their complaint in this court.

Accordingly, Nationwide's motion to dismiss will be denied as to Count I. In addition, Plaintiff Samuel Vassallo's Count I claim will be stayed until November 4, 1994.

### B. Count II—Violation of the Fair Housing Act

■ In Count II of their complaint, plaintiffs allege that Nationwide has violated sec-

---

**6.** The other four plaintiffs filed their EEOC and PHRC complaints on or about February 17, 1993. Complaint, at ¶ 26.

**7.** Other courts of appeals applying Section 626(d) have dismissed untimely ADEA claims instead of staying them; in each of those cases, however, either the district courts had reached the merits or the untimeliness was only an alternate ground for dismissal. *See Chapman v. City of Detroit*, 808 F.2d 459, 462 (6th Cir.1986) (alternate ground); *Dempsey v. Pacific Bell Co.*, 789

F.2d 1451, 1453 (9th Cir.1986) (merits reached); *Vance v. Whirlpool Corp.*, 707 F.2d 483, 490 (4th Cir.) (same), *supplemented on reh'g*, 716 F.2d 1010 (1983), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 873 (1984); *Cannon v. University of Chicago*, 559 F.2d 1063, 1076 (7th Cir.1976) (alternate ground), *rev'd on other grounds*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

tion 804 of the Fair Housing Act ("Section 804"), codified at 42 U.S.C.A. § 3604 (West Supp.1994), by discriminating against individuals on the basis of age, sex, color, financial ability, and geographical location.[8] Defendants make two challenges to this count: first, that Section 804 does not apply to the business of insurance; and second, that the plaintiffs have failed to allege a causal link between the alleged discrimination in housing, which is covered by Section 804, and actual harm to the plaintiffs.[9]

■ The first issue to be addressed is whether discrimination in insurance related to housing is covered by Section 804. Nationwide argues that under *Mackey v. Nationwide Ins. Companies,* 724 F.2d 419, 423–25 (4th Cir.1984), Section 804 does not apply to such insurance.

The *Mackey* court rested its decision on four grounds. First, that given 42 U.S.C.A. § 3605's (West Supp.1994) ("Section 805") specific prohibition of discrimination in the financing of housing, Section 804 could not have been designed to reach every discriminatory act that might conceivably affect the availability of housing. Second, that Congress may not have intended to interfere with the insurance industry's classification of risk. Third, that Section 804 and its legislative history lacks any reference to insurance. And fourth, that Congress has failed to pass amendments to the Fair Housing Act that would have explicitly made Section 804 applicable to insurance. 724 F.2d at 423–24.

The Court of Appeals for the Seventh Circuit rejected these arguments for five reasons. *See NAACP v. American Family Mut. Ins. Co.,* 978 F.2d 287, 297–301 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2335, 124 L.Ed.2d 247 (1993). First, the court could not find any reason why

Section 805 and Section 804 could not overlap. Second, financial lenders are as much in the risk assessment business as insurers, but Congress did not choose to allow them to escape the provisions of the Fair Housing Act; therefore, the court found no reason to imply that Congress intended to exempt insurers from the Fair Housing Act's coverage. Third, Section 804 was written in general terms and did not specifically apply to any particular persons or industry. Fourth, the court found the failure of the Congress to pass subsequent amendments was irrelevant for determining the original congressional intent embodied in Section 804, especially since subsequent amendments may fail for any number of reasons. 978 F.2d at 298–300.

While I am not completely convinced by the first four reasons given by the Court of Appeals for the Seventh Circuit, I do find their fifth and final argument compelling: the court of appeals found that after *Mackey* was decided the Department of Housing and Urban Development had promulgated regulations explicitly stating that Section 804 covers discrimination in the provision of property and hazard insurance. 24 C.F.R. § 100.70(d)(4). Given the deference that is due to an agency's congressionally delegated and plausible construction of a statute, the existence of this regulation supports plaintiffs' position that Section 804 applies to the business of insurance. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

■ With regard to Nationwide's second argument, the plaintiffs have sufficiently alleged a causal link between the illegal discrimination and the actual harm done to them. Reading the complaint in the light

---

**8.** Section 804(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b) (West Supp.1994).

**9.** It is well settled that to have standing under the Fair Housing Act, a plaintiff need only have sustained an injury in fact resulting from the defendant's violation of the Fair Housing Act,

even when the plaintiff was not the primary target of the alleged violation. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372, 102 S.Ct. 1114, 1120–21, 71 L.Ed.2d 214 (1982). The plaintiffs have sufficiently alleged such an injury by stating that they lost commissions and suffered other monetary losses as a result of defendants' alleged violations of the FHA. Complaint, at ¶¶ 37, 38. In addition, the plaintiffs imply that they were terminated as a result of these violations. *Id.* at ¶ 36(n).

most favorable to the plaintiffs, plaintiffs claim that Nationwide adopted policies that forced agents to withdraw from predominantly minority areas. Complaint, at ¶ 36. The plaintiffs further allege that these policies caused the plaintiffs to lose commissions and other monetary benefits. Complaint, at ¶¶ 37–38. In addition, plaintiffs imply that as part of Nationwide's program to not insure in predominantly minority areas, Nationwide terminated the employment of the plaintiffs. Complaint, at ¶ 36(n).[10]

Accordingly, I will deny Nationwide's motion to dismiss Count II of the complaint.

### C. *Counts III & IV—Violation of Pennsylvania Insurance Laws*

In Count III of their complaint, plaintiffs allege that Nationwide engaged in red lining of automobile insurance in violation of the Pennsylvania Automobile Insurance Act, 40 Pa.Stat.Ann. §§ 1008.1–.11 (1992) ("Auto Insurance Act"), specifically section 1008.3.[11] In Count IV, plaintiffs allege that Nationwide terminated them improperly because Nationwide failed to provide them with ninety days notice of their terminations and failed to put them in a rehabilitation program prior to their terminations as required by 40 Pa.Stat.Ann. § 242(a) and (f) (1992) ("Agent Termination Act"). Nationwide argues that there is no private right of action under either the Auto Insurance Act or the Agent Termination Act. With regard to the Agent Termination Act, Nationwide argues in the alternative that the Agent Termination Act does not apply to the plaintiffs, because Nationwide is the owner of the plaintiffs' insurance businesses. *See* 40 Pa.Stat.Ann. § 241.1(b)(1) (1992) ("[t]he provisions of [the Agent Termination Act] do not apply to: (1) business owned by the insurer and not by the agent, provided such insurer offers to continue such policies through another of its agents").

Pennsylvania has not adopted a general test for determining whether a given statute creates a private cause of action, and no Pennsylvania court has ruled on whether either of these acts creates a private cause of action. Therefore, I must examine the Pennsylvania cases interpreting similar statutes in order to determine whether a private cause of action exists under these two acts. One federal court has already taken this approach, finding that the Auto Insurance Act is sufficiently similar to Pennsylvania's Unfair Insurance Practices Act, 40 Pa.Cons. Stat.Ann. § 1171.1–.15 (1992) ("Unfair Practices Act") so as to allow the Supreme Court of Pennsylvania's decision regarding whether a private right of action exists under the Unfair Practices Act to apply to the Auto Insurance Act. *See Park Ins. Agency v. National Grange Mut. Ins. Co*, 722 F.Supp. 1206, 1207 (E.D.Pa.), *aff'd*, 888 F.2d 1381 (3d Cir.1989).

In *D'Ambrosio v. Pennsylvania Nat'l Mut. Casualty Ins. Co.*, 494 Pa. 501, 431 A.2d 966 (1981), the Supreme Court of Pennsylvania ruled that the Unfair Practices Act does not provide a private cause of action. The Court rejected the plaintiff's invitation to judicially create a private cause of action under 40 Pa.Cons.Stat.Ann. §§ 1171.4–.5 (1992) for "bad faith" conduct by an insurance carrier.[12]

---

**10.** Nationwide argues that the termination of the employment of the plaintiffs was the result of a failure to meet *auto insurance* loss ratios and therefore cannot be related to housing discrimination. The plaintiffs in their complaint, however, do not characterize the loss ratio requirement as applying to any particular type of insurance. Nationwide's evidence to the contrary cannot be considered in the context of a motion to dismiss. In addition, the plaintiffs imply that Nationwide's discriminatory practices and not the loss ratio requirement were the true basis for the termination of their employment. *See* Complaint, at ¶ 36(n).

**11.** Section 1008.3 of the Auto Insurance Act states in relevant part: "[n]o insurer shall cancel or refuse to write or renew a policy of automobile insurance for one or more of the following reasons: ... (2) Residence or operation of a motor vehicle in a specific geographic area." 40 Pa.Stat.Ann. § 1008.3(a) (1992).

**12.** The Court did invite the legislature to create such a cause of action, and the legislature responded by doing just that in the form of enacting 42 Pa.Cons.Stat.Ann. § 8371 (Supp.1994). *See Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 750 (3d Cir.1994). This statutory provision, however, is not at issue in this case because it only extends to actions arising *under an insurance policy* that allege "bad faith conduct" toward the insured. 42 Pa.Cons.Stat.Ann. § 8371 (Supp.1994).

431 A.2d at 969–70. It found that the regulatory scheme created by the legislature in the Unfair Practices Act was sufficient to accomplish the purposes of that Act without the addition of a private cause of action. *Id.* 431 A.2d at 970.

In *Park, supra,* a federal district court expanded the *D'Ambrosio* holding to include the Auto Insurance Act. In *Park,* an insurance agent filed a breach of contract action against an automobile insurer after he was terminated for complaining about alleged red lining; the *Park* decision involved a motion by the defendant for partial summary judgment with regard to punitive damages that the plaintiff had sought based on the public policy against red lining reflected in the Auto Insurance Act. 722 F.Supp. at 1207. The court granted the motion based on its finding that the similarity between the Auto Insurance Act and the Unfair Practices Act indicated that the Supreme Court of Pennsylvania would find that no private cause of action existed under the Auto Insurance Act as well as under the Unfair Practices Act. *Id.*

The three acts, the Auto Insurance Act, the Agent Termination Act, and the Unfair Practices Act, are similar in their purposes and the administrative scheme established in each to further those purposes, though their scopes vary. All three acts regulate the insurance business in Pennsylvania, each act covering a different areas of that business.[13] Certain conduct, such as redlining, is barred by both the Auto Insurance Act and the Unfair Practices Act. 40 Pa.Stat.Ann. §§ 1008.3(a)(2) (1992) (Auto Insurance Act); 40 Pa.Cons.Stat.Ann. § 1171.5(a)(7)(iii) (1992) (Unfair Practices Act). All three acts grant the Pennsylvania Insurance Commissioner ("Commissioner") the power to investigate suspected violations and to impose penalties. 40 Pa.Stat.Ann. §§ 245(b) (Agent Termination Act), 1008.8–.10 (Auto Insurance Act) (1992); 40 Pa.Cons.Stat.Ann. §§ 1171.7–11 (Unfair Practices Act).

In the three acts, there are only two mentions of a right of insureds, potential insureds, or insurance agents to take action on their own. In the Auto Insurance Act, an insured or an applicant whose policy or application has been canceled, not renewed, or refused may send a written request to the Commissioner for a review of the matter. 40 Pa.Stat.Ann. § 1008.8 (1992). In the Agent Termination Act, a terminated agent may request that the Commissioner review her termination. *Id.* at § 242(d).

Therefore, the Auto Insurance Act and Unfair Practices Act are similar in terms of the activities regulated and the powers granted to the Commissioner, and in terms of the failure of either act to mention any private right of action. The Agent Termination Act, while not covering the same activities as the other two acts, also provides the Commissioner with enforcement powers and does not mention any private right of action. Since under all of these acts the Commissioner has the power to investigate and remedy violations, and the legislature has not seen fit to provide explicitly for a private right of action under any of these acts, I conclude that the Supreme Court of Pennsylvania would extend its *D'Ambrosio* holding to both the Auto Insurance Act and the Agent Termination Act. Therefore, I find that no private right of action exists under either act.

Plaintiffs argue that the existence of other remedies for the plaintiff in *D'Ambrosio,* such as under the Unfair Trade Practices and Consumer Protection Law, 73 Pa.Stat. Ann. §§ 201–1 to 9.2 (Supp.1993), renders the holding in *D'Ambrosio* inapplicable to the Auto Insurance Act and the Agent Termination Act. Even assuming the existence of other remedies for the plaintiff in *D'Ambrosio,* these other remedies were not mentioned as a relevant factor by the Court in that case. The Court's rationale rested instead on its reasoning that the legislature's policies were sufficiently vindicated by the enforcement power of the Commissioner and so the Unfair Practices Act does not provide for or require a private right of action. *D'Ambrosio,* 431 A.2d at 970.

---

13. The Unfair Practices Act covers all types of insurance. *See* 40 Pa.Stat.Ann. § 1171.3 (1992). The Auto Insurance Act is limited to certain types of automobile insurance. 40 Pa.Stat.Ann. § 1008.2 (1992). The Agent Termination Act applies solely to the termination of insurance agents. *Id.* at §§ 241–42.

■ Plaintiffs also assert that there is a common-law "bad faith" conduct cause of action available against insurers in Pennsylvania. This assertion is incorrect. The case that the plaintiffs rely upon, *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 410 Pa. 55, 188 A.2d 320 (1963), does not establish such a cause of action. In *Gedeon*, the Supreme Court of Pennsylvania found that an insured had a cause of action against his insurer for failure to defend the insured against a lawsuit arising under the policy. The cause of action existed because such a failure was a breach of the contract between the parties, not because a separate bad faith conduct cause of action existed. *Id.*

The plaintiffs are also incorrect in asserting that 42 Cons.Stat.Ann. § 8371 (Supp. 1994) ("Section 8371") represents the codification of a thirty year old bad faith conduct common-law cause of action. Instead, Section 8371 was passed in response to the *D'Ambrosio* decision. *See Polselli, supra*, 23 F.3d at 750.[14]

Because I find that the Auto Insurance Act and the Agent Termination Act do not provide private causes of action, Nationwide's motion to dismiss will be granted as to Counts III and IV.

### D. *Count V—Wrongful Discharge*

■ In Count V of their complaint, plaintiffs state that they were ordered by Nationwide to implement unlawful red lining policies in order to meet a "loss ratio" requirement, and that they were fired when they failed to meet this requirement.[15] Nationwide moves to dismiss this count on two grounds. First, Nationwide argues that plaintiffs cannot state a claim for wrongful discharge because they have failed to allege a violation of a clear mandate of public policy as required by Pennsylvania law. Second, Nationwide argues that plaintiffs are independent contractors and not employees and, therefore, cannot state a claim for wrongful discharge under Pennsylvania law.

The Supreme Court of Pennsylvania created a cause of action for wrongful discharge in *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). The Court held that an employee who was allegedly fired for complaining about potentially unsafe pipes being sold by his employer did not state a cause of action; but the Court went on to say that when a "clear mandate of public policy" was violated by an employee's termination, then a cause of action would exist. *Id.* 319 A.2d at 180. While the Court declined to delineate the parameters of this exception to the general rule that no non-statutory cause of action exists for termination of an at-will employment relationship, subsequent Pennsylvania court decisions have generally found such clear mandates "when the discharge is a result of the employee's compliance with or refusal to violate the law." *Woodson v. AMF Leisureland Centers, Inc.*, 842 F.2d 699, 701–2 (3d Cir.1988); *see Field v. Philadelphia Elec. Co.*, 388 Pa.Super. 400, 565 A.2d 1170 (1989) (discharged for reporting violations of

---

**14.** Plaintiffs also argue that because the Agent Termination Act leaves to an agent's discretion whether she should seek review of her termination by the Commissioner, the agent must also have the option of seeking judicial enforcement of the Agent Termination Act. *See* 40 Pa.Stat. Ann. § 242(d). This argument also fails. Simply because the legislature left it up to an aggrieved agent's discretion as to whether to pursue relief by complaining to the Commissioner does not imply that the legislature intended to give aggrieved agents who eschew complaining to the Commissioner another avenue for pursue relief in the form of filing a complaint in court. The plaintiffs' reliance on the only federal decision involving the Agent Termination Act is misplaced. *See Ardrey v. Federal Kemper Ins. Co.*, 798 F.Supp. 1147, 1153 (E.D.Pa.1992). In *Ardrey*, the court determined that the act was not applicable to the harm alleged by the plaintiffs,

and so the court did not reach the issue of whether the plaintiffs had a cause of action under the act separate from seeking relief from the Commissioner. *Id.*

**15.** Plaintiffs also include in this count Nationwide's failure to rehabilitate them as required by the Agent Termination Act. Complaint, at ¶ 61. Plaintiffs appear, however, to have abandoned any assertion that the Agent Termination Act creates a clear mandate of public policy that would support a claim for wrongful discharge, since they make no mention of the act in their subsequent briefs. Under any conditions, as the discussion of Count IV, *supra*, makes clear, the proper way to seek a remedy for a violation of the Agent Termination Act is to seek relief through the administrative review mechanism established in that act.

Nuclear Regulatory Commission regulations as required by law); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (discharged for performing jury service). The federal courts have likewise found that a cause of action for wrongful discharge exists under Pennsylvania law when a statute or constitutional provision is involved. *See, e.g., Woodson, supra* (discharged for obeying Pennsylvania law that requires liquor sellers to refuse to sell liquor to visibly intoxicated persons); *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894 (3d Cir. 1983) (discharged for refusing to participate in company lobbying effort; court held that the discharged violated the plaintiff's freedom of political expression and association embodied in U.S. and Pennsylvania constitutions); *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3d Cir.1979) (discharged for refusing to take a polygraph examination; Pennsylvania law forbids using polygraph examinations as a condition of employment).[16]

Red lining is a prohibited activity for insurers. 40 Pa.Stat.Ann. § 1008.3(a)(2) (1992); 40 Pa.Cons.Stat.Ann. § 1171.5(a)(7)(iii) (1992). When red lining involves property or hazard insurance and is associated with discrimination on the basis of race or color, it is also forbidden under the Fair Housing Act. *See* discussion of Count II, *supra*. In addition, insurance *agents* are also specifically prohibited from red lining. 40 Pa.Cons.Stat.Ann. § 1171.5(a)(7)(iii) (1992).[17] Agents who do red line can be subject to civil penalties. *Id.* at § 1171.11. Therefore, as the court in *Park Ins. Agency, supra*, stated, there is a "strong public policy in Pennsylvania against 'red-lining' by insurance companies." 722 F.Supp. at 1207.

The plaintiffs have detailed numerous programs and practices of the defendants which they allege were part of overall red lining plan, for example, pricing Nationwide policies out of certain geographical areas, providing lower quality service of policies in certain areas, and ordering agents out of certain areas. Complaint, at ¶ 36. It can be inferred from their complaint that plaintiffs were terminated as a result of their refusal to follow these allegedly illegal programs and practices. *Id.* at ¶¶ 36(n), 57–60. Therefore, reading the plaintiff's complaint in the most favorable light, it states a claim for wrongful discharge under Pennsylvania law.

To support their assertion that red lining does not constitute a violation of public policy sufficient enough to support a claim of wrongful discharge, Nationwide relies on *Newton v. Nationwide Mut. Ins.*, No. 93–3220 (3d Cir. Nov. 16, 1993).[18] The court in *Newton*, however, did not explicitly rule on whether red lining could constitute a suffi-

16. In a few cases, Pennsylvania courts have refused to find a cause of action even when the plaintiffs alleged that their actions were necessary in order to comply with statutes. *See Callahan v. Scott Paper Co.*, 541 F.Supp. 550 (E.D.Pa. 1982) (objecting to and attempting to eliminate alleged illegal price discounts and promotional allowances); *Hineline v. Stroudsburg Elec. Supply Co., Inc.*, 384 Pa.Super. 537, 559 A.2d 566 (dismantling of allegedly illegal surveillance equipment), *appeal denied*, 524 Pa. 628, 574 A.2d 70 (1989); *McGonagle v. Union Fidelity Corp.*, 383 Pa.Super. 223, 556 A.2d 878 (refusal to mail insurance mailings that were allegedly in violation of state law), *appeal denied*, 525 Pa. 584, 575 A.2d 115 (1989). In each of these cases, however, the issue of whether the act alleged was indeed illegal was unclear; in light of this uncertainty, the courts felt that the judgement as to whether the act was illegal was in the hands of the employer and not the employee. *Callahan*, 541 F.Supp. at 563 ("employee complaints on matters generally entrusted to management" do not rise to the level of a clear mandate of public policy); *Hineline*, 559 A.2d at 569–70 (holding that plaintiff had no authority or statutory right for actions; proper course was to report actions to proper legal authority); *McGonagle*, 556 A.2d at 885 ("when the act to be preformed turns upon a question of judgment, as to its legality or ethical nature, the employer should not be precluded from conducting its business where the professional's opinion is open to question"). The discrimination and red lining that the plaintiffs have alleged, and which must be assumed to be true for the purposes of this motion to dismiss, are clearly illegal, as discussed *infra*.

17. 40 Pa.Cons.Stat.Ann. § 1171.4 extends § 1171.5's provisions to any "person"; person is defined in § 1171.3 to specifically include insurance agents.

18. As the parties point out, under the Court of Appeals for the Third Circuit Internal Operating Procedures ch. 5, § 5.8, the *Newton* opinion is not binding precedent for this court. However, the Internal Operating Procedures do not bar me from considering that opinion based simply on the soundness of its reasoning.

cient violation of public policy so as to support a wrongful discharge cause of action. Rather, the court upheld the district court's grant of summary judgment to the defendants on the wrongful discharge claim because the evidence presented to the district court failed to substantiate the plaintiff's " 'amorphous allegation of redlining.' " *Id.* at 5. Since I am ruling on a motion to dismiss, I need only consider the allegations in the plaintiff's complaint, and, as explained, *supra*, I find them sufficient to state a cause of action.

■ Nationwide also argues that the plaintiffs' claim must fail because Pennsylvania's tort of wrongful discharge does not extend to independent contractors such as the plaintiffs. Even if I assume that Nationwide is correct in that the tort of wrongful discharge is not available for independent contractors, plaintiffs have sufficiently alleged in their complaint that they were employees. *See* discussion of Count I, *supra.* Therefore, since the factual allegations in their complaint must be taken as true, this argument must fail.

Accordingly, Nationwide's motion to dismiss will be denied as to Count V.

### E. *Count VI—Fraudulent Misrepresentation*

■ In Count VI of their complaint, plaintiffs allege that Nationwide intentionally made false representations to them by promising that their employment would not be terminated as a result of their loss ratio. Nationwide moves to dismiss this count for three reasons. First, Nationwide argues that the plaintiffs have failed to plead fraudulent misrepresentation with the specificity required by Fed.R.Civ.P. 9(b) ("Rule 9(b)"). Second, Nationwide argues that even assuming it made the alleged statements to plaintiffs, the statements constitute a mere promise to refrain from doing a future act which does not rise to the level of a valid fraud claim. Third, Nationwide argues that plaintiffs' fraud claim fails because they have not alleged a required element, justifiable reliance resulting in damages.

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The Court of Appeals for the Third Circuit has stated that "in applying Rule 9(b), 'focusing exclusively on its "particularity" language "is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." ' " *Seville Indus. Mach. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984) (quoting *Christidis v. First Pennsylvania Mortgage Trust,* 717 F.2d 96, 100 (3d Cir.1983) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1298, at 407 (1969)), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). The *Seville* case involved the purchase of pieces of industrial machinery by the defendant from the plaintiff; the sales were allegedly induced by fraudulent misrepresentations made by the defendant. *Id.* at 788. The *Seville* court rejected a reading of Rule 9(b) that would absolutely require "allegations of 'date, place or time' " for the fraudulent misrepresentations and instead accepted as sufficient a complaint that gave the substance of the misrepresentations and tied each of the misrepresentations to the specific transactions that were induced by that misrepresentation. *Id.* at 791. In *Saporito v. Combustion Engineering Inc.,* 843 F.2d 666 (3d Cir.1988), *vacated on other grounds,* 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989), the Court of Appeals for the Third Circuit held that a complaint that did "not indicate who the speakers were ... or who received the information" did not meet the requirements of Rule 9(b). *Id.* at 675.

In the instant case, the plaintiffs have provided more information than the plaintiffs in *Saporito* provided, but I find that their allegations still fall short of the requirements of Rule 9(b). While the plaintiffs have stated the content of the allegedly fraudulent misrepresentations ("[w]hile in the employ of Nationwide, Plaintiffs were assured they would not be terminated for their loss ratio") and identified themselves as the recipients of the misrepresentations, they have failed to identify what agent or employee of the defendants communicated these misrepresenta-

tions. Complaint, at ¶ 66. In addition, the plaintiffs in *Saporito* limited the time of the communications to eleven days. 843 F.2d at 669, 673. In the instant case, the plaintiffs have given their entire time of employment with Nationwide as the period during which the defendants made the fraudulent misrepresentations. Complaint, at ¶ 66. This period extends up to approximately twenty-seven and a-half years for some of the plaintiffs. *Id.* at ¶¶ 17, 20. It is unreasonable to require the defendants to answer the plaintiffs' claims faced with such a wide range of possible communicators of the misrepresentations, and such a long period of time during which the misrepresentations were made.

Accordingly, plaintiffs are granted leave to amend their complaint as to Count VI, and Nationwide's motion to dismiss will be denied without prejudice as to Count VI.

### F. Count VII—Breach of Contract

■ In Count VII of their complaint, plaintiffs state that Nationwide breached their contracts with the plaintiffs by imposing a "loss/ratio" requirement that was purportedly the reason for their termination of employment. The plaintiffs rely on paragraph 17 of their Agent's Agreements ("Agreements") with Nationwide, which states: "**Amendments or Modifications.** Except as otherwise provided herein, this Agreement may be changed, altered, or modified only in writing signed by you and an officer of the Companies." Motion, Exhibit A, at ¶ 17.[19] Nationwide counters that the imposition of the loss/ratio requirement did not breach the Agreements with the plaintiffs, or, in the alternative, that the plaintiffs ratified any such breach.

Plaintiffs have asked for leave to amend Count VII in order to additionally allege that Nationwide breached an implied contractual provision "that plaintiffs would never be terminated for loss/ratio." Plaintiffs' memorandum in support of plaintiffs' response to de-

fendants' motion ("Reply Memorandum"), at 26. The plaintiffs have also asserted that their Agreements with Nationwide were contracts of adhesion because the plaintiffs "lacked complete economic bargaining power to reject, modify, amend or contract out any provision." *Id.* at 1 n. 1. Since nothing alleged in the complaint supports this charge, I will treat this new allegation as an additional request for leave to amend the complaint.

The main arguments of the defendants against both the breach of contract count as currently stated and against the breach of implied contract amendment rest on various provisions within the Agreements. Since the plaintiffs' contract of adhesion allegation is presumably aimed at the very provisions upon which the defendants rely, I will first address the plaintiffs' request for leave to amend the complaint so as to add a contract of adhesion allegation.

■ Leave to amend must be "freely given when justice so requires." Fed.R.Civ.P. 15(a); *see also Dole v. Arco Chemical Co.*, 921 F.2d 484, 486–87 (3d Cir.1990) (leave to amend should be granted liberally). The factors that may weigh against granting leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

■ In order for a contract to be invalidated as a contract of adhesion, the plaintiffs "must allege both a lack of meaningful choice about whether to accept the provision in question, and that the disputed provisions were so one-sided as to be oppressive." *Stebok v. American Gen. Life & Acc. Ins. Co.*, 715 F.Supp. 711, 714 (W.D.Pa.), *aff'd*, 888 F.2d 1382 (3d Cir.1989). Since I do not

---

**19.** This passage is located at paragraph 17 on page 8 of the Agreements between Nationwide and plaintiffs Howard Silver, Warren Pine, Edward Sheehan, and Samuel Vassallo, and at paragraph 16 of the Agreement between Nationwide and plaintiff Lawrence Strange. Motion, Exhibit A. The Agreement with Lawrence

Strange substitutes the word "Agency" for "you," apparently because the Agreement was between Lawrence J. Strange Insurance, Inc. and Nationwide. Neither the plaintiffs nor the defendants have challenged the validity of this Agreement with regard to Mr. Strange's claims as an individual.

currently have enough information to determine whether allowing this amendment would be futile, and none of the other factors that weigh against granting leave to amend appear to be applicable, I will grant the plaintiffs leave to amend this count in order to put forward a claim that the Agreements or portions thereof constitute contracts of adhesion. In order to save time and judicial resources, I will also grant the plaintiffs leave to amend Count VII to put forward a claim of an implied contractual term forbidding the imposition of loss ratio requirements. Since Nationwide's arguments in opposition to this request for leave to amend rely heavily on the provisions that I presume the plaintiffs intend to attack with their contract of adhesion allegation, it is appropriate to allow both issues to be fully pled.

Accordingly, I will grant plaintiffs leave to amend their complaint as to Count VII; Nationwide's motion to dismiss will be denied without prejudice as to Count VII.

### G. Count VIII—Defamation

In Count VIII of their complaint, plaintiffs allege that Nationwide defamed plaintiffs Strange and Pine by terminating them as a result of their loss ratios, and so compelled plaintiffs Strange and Pine to "self-publish" this allegedly false and defamatory information to prospective employers. Nationwide counters that the plaintiffs have not stated a cause of action for defamation because they have failed to allege publication *by Nationwide* of the allegedly defamatory information. In the alterative, Nationwide argues that the plaintiffs' claims are time-barred.

In addition, plaintiffs have made additional allegations that Nationwide sent letters regarding their termination to every customer of the plaintiffs, and that these letters falsely implied that the plaintiffs had engaged in some type of improper conduct, and, therefore, were defamatory. Reply Memorandum, at 27. I will treat these additional allegations as a request to amend this count of the complaint.

### 1. Compelled Self–Publication

First, I will address the motion by Nationwide to dismiss the count as it was originally stated. Pennsylvania law requires plaintiffs to plead "publication by the defendant" of defamatory remarks in order to sustain an action for defamation. 42 Pa.Cons.Stat.Ann. § 8343(a)(2). The plaintiffs argue that "publication" should include "compelled self-publication," which occurs when a "defendant makes a defamatory statement to the plaintiff who later is compelled to communicate the defamatory matter to a third party, and it was foreseeable to the defendant that the plaintiff would be compelled to publish the matter." *Yetter v. Ward Trucking Co.*, 401 Pa.Super. 467, 585 A.2d 1022, 1024, *appeal denied*, 529 Pa. 623, 600 A.2d 539 (1991). They note that while the court in *Yetter* refused to find publication when an employer gives an employee, and only the employee, a termination letter stating the reasons for her discharge, the court explicitly left open the possibility that compelled self-publication could constitute publication under Pennsylvania law in a different set of circumstances. *Id.* at 1025.

While the plaintiffs are correct in their assessment of *Yetter*'s holding, the facts that they allege are very close to the facts in *Yetter*. In *Yetter*, a terminated employee was "compelled" to disclose to his family, relatives, and prospective employers the allegedly defamatory statements contained in his termination letter. In this case, the plaintiffs have alleged that they were compelled to communicate the reason for their termination to prospective employers. The allegedly defamatory reason was orally communicated to them by Nationwide, and only to them. Therefore, the only significant factual difference is that here the communication was oral while in *Yetter* it was in writing. This is the same difference that existed in *Ritter v. Pepsi Cola Operating Co.*, 785 F.Supp. 61 (M.D.Pa.1992), where the federal district court found that *Yetter* was applicable when the initial communication from the employer was oral instead of in writing. *Id.* at 64. I agree with the *Ritter* decision in that I fail to see how the method of communication is relevant in this context.[20] Since

---

**20.** The *Yetter* decision rested on a holding that

"Pennsylvania law recognizes the absolute privi-

the plaintiffs have not produced and I have not discovered any Pennsylvania case that rejects *Yetter*'s holding, I find that Pennsylvania law does not recognize compelled self-publication as constituting publication for defamation purposes when the initial communication is from an employer to an employee regarding the reasons for the employee's dismissal.

### 2. *Request for Leave to Amend*

With regard to the request for leave to amend, the plaintiffs in their Reply Memorandum have alleged that Nationwide sent letters to the plaintiffs' former clients, informing these clients that the plaintiffs were no longer employed by Nationwide. The plaintiffs allege that these letters implied that the plaintiffs were guilty of some impropriety. Reply Memorandum, at 27. Nationwide responds that these letters could not have been defamatory because they only stated a true fact, that the plaintiffs were no longer associated with Nationwide.

The fact that a communication was true is usually a complete defense to a charge of defamation. *U.S. Healthcare v. Blue Cross of Gr. Philadelphia*, 898 F.2d 914, 923 (3d Cir.1990), *cert. denied*, 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990). Even true statements, however, must be read in context; "[t]he literal accuracy of individual statements will not insulate a defendant from liability where the overall impression left by those statements is false." *Coughlin v. Westinghouse Broadcasting & Cable, Inc.*, 603 F.Supp. 377, 385 (E.D.Pa.), *aff'd*, 780 F.2d 340 (3d Cir.1985), *cert. denied*, 476 U.S. 1187, 106 S.Ct. 2927, 91 L.Ed.2d 554 (1986). While the complaint makes it clear that the

plaintiffs were indeed terminated from their employment, the context and the exact language of any communications from Nationwide to the plaintiffs' customers have not been pled and so is not known to me. Therefore, I cannot determine whether the plaintiffs could successfully plead a cause of action for defamation based on these alleged letters.

Because I find that Pennsylvania law does not allow a defamation claim based on compelled self-publication, I will grant Nationwide's motion to dismiss as to Count VIII. In addition, I will grant plaintiffs leave to amend their complaint so as to include a new claim of defamation based on the alleged letters from Nationwide to the former customers of plaintiffs.

### III. CONCLUSION

For the foregoing reasons, Nationwide's motion to dismiss plaintiffs' complaint will be granted as to Counts III, IV, and VIII and denied as to Counts I, II, and V. Therefore, Counts III, IV, and VIII will be dismissed with prejudice. In addition, Nationwide's motion to dismiss will be denied without prejudice as to Counts VI and VII; plaintiffs are given leave to amend Counts VI and VII and are given leave to amend in order to allege a new claim of defamation. Plaintiff Vassallo's claim under Count I will be stayed until November 4, 1994.

---

lege of employers to publish defamatory matter in notices of employee termination." 585 A.2d at 1024. This privilege has expanded over time. Initially, it only applied to statements made in connection with a labor dispute arbitration. *See DeLuca v. Reader*, 227 Pa.Super. 392, 323 A.2d 309 (1974). It was then extended to termination notices required by a collective bargaining agreement. *See Agriss v. Roadway Express, Inc.*, 334 Pa.Super. 295, 483 A.2d 456 (1984). Next, evaluations of an employee came within the privilege's orbit because evaluations are considered consented to by the employee. *Baker v. Lafayette College*, 350 Pa.Super. 68, 504 A.2d 247 (Pa.Su-

per.1986), *aff'd*, 516 Pa. 291, 532 A.2d 399 (1987). Finally, in dicta, a Pennsylvania court extended the privilege to all notices of employee terminations. *See Sobel v. Wingard*, 366 Pa.Super. 482, 531 A.2d 520, 522 (1987). This expansion has not yet come before the Supreme Court of Pennsylvania. It has also been subject to at least one federal court criticism. *See Frymire v. Painwebber, Inc. (In re Frymire)*, 87 B.R. 856, 859 (Bankr.E.D.Pa.1988). It appears, however, to be the current direction of Pennsylvania law and, therefore, a reasonable support for the holding in *Yetter*.