IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

KAREN SULLIVAN,

      Plaintiff-Appellant,

Vs.

BAPTIST MEMORIAL HOSPITAL,
PATRICIA THOMAS, Individually
and as Assistant Director of Nursing at
Baptist Memorial Hospital East; and
SUSAN PARSONS, Individually and
in her Capacity as Respiratory Therapy
Manager,

      Defendants-Appellees.

Shelby Circuit No. 55553 T.D.
C.A. No. 02A01-9610-CV-00237



FILED

July 31, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

FROM THE CIRCUIT COURT OF TENNESESE FOR THE
THIRTIETH JUDICIAL DISTRICT AT MEMPHIS
THE HONORABLE KAREN R. WILLIAMS, JUDGE

Stephen H. Biller and Sara Hall; Baker, Donelson,
Bearman & Caldwell of Memphis
For Appellant

J. Edward Wise, Paul E Prather, Steven W. Likens;
Kiesewetter, Wise, Kaplan, Schwimmer & Prather of Memphis
For Appellees

*REVERSED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

CONCUR:

ALAN E. HIGHERS, JUDGE

DAVID R. FARMER, JUDGE

      This is a defamation case. Plaintiff, Karen Sullivan, appeals from the order of the trial

court granting summary judgment to defendant, Baptist Memorial Hospital (BMH).[1]

Karen Sullivan was a full-time staff nurse in the neonatal intensive care unit (NICU) at BMH for fourteen years. She also performed temporary nursing services at St. Francis Hospital through a staffing agency known as CliniCall.

In the NICU, nurses used angiocaths to start IVS on infants in the unit. Susan Parsons, a fellow BMH nurse, reported to BMH that Sullivan admitted taking angiocaths from BMH to use at St. Francis. Sullivan denied making the statements to Parsons and denied that she had stolen any angiocaths. After a meeting with Patricia Thomas, the Assistant Director of Nursing, BMH terminated Sullivan on February 22, 1993 for the alleged misappropriation of hospital property.

Sullivan experienced difficulty obtaining new employment because she was forced to disclose the reason for her termination on job applications to prospective employers. She applied for jobs at Methodist North and Jackson Madison County Hospital, but was not granted a position.

On August 3, 1993, Sullivan filed a complaint against BMH, Patricia Thomas, and Susan Parsons alleging, *inter alia*, defamation.[2] In addition to the allegations against Thomas and Parsons, the complaint alleges that BMH has disseminated defamatory, false, malicious, and scandalous information about Sullivan to her potential employers, precluding her from becoming gainfully employed.

On January 30, 1996, BMH, Thomas, and Parsons all filed motions for summary judgment. After a hearing on April 19, 1996, the trial court granted summary judgment in favor of all three defendants. Sullivan conceded that summary judgment was appropriate as to all claims against Thomas and Parsons. Sullivan also conceded that summary judgment was appropriate in favor of BMH for all claims except the defamation claim. However, the trial court granted summary judgment for BMH on the defamation claim holding that "self-publication"

---

[1] Summary judgment was also granted to defendants Patricia Thomas and Susan Parsons with Sullivan's consent. Thomas and Parsons are not parties to this appeal.

[2] The complaint also alleges tortious interference with Sullivan's employment, outrageous conduct, intentional infliction of emotional distress, and a failure to provide proper notice of her COBRA rights in violation of 29 U.S.C. § 1001 *et seq.* (1985) and T.C.A. § 56-7-2312 *et seq.* (1994) that impermissibly denied her right to insurance benefits. These claims were dismissed on summary judgment for the defendants, but these claims were not raised as issues on appeal.

of false information does not satisfy the publication element required to establish a claim for defamation.

Sullivan appeals the trial court's order granting summary judgment to BMH on the defamation claim and presents one issue for review: whether the publication element of defamation can be established by compelled self-publication in the employment context.

A trial court should grant a motion for summary judgment when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. The phrase "genuine issue" as stated in Rule 56.03 refers to genuine factual issues and does not include issues involving legal conclusions to be drawn from the facts. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). Because the facts are undisputed in this case, we must decide whether the legal conclusions on which the trial court's grant of summary judgment was based are correct. Our review is *de novo* on the record with no presumption of the correctness of the trial court's conclusions of law. *Union Planters Nat'l Bank v. American Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. App. 1993).

Sullivan argues that she has experienced difficulty in obtaining employment because she is forced to tell her prospective employers that she was terminated by BMH for misappropriating hospital property. She claims that the publication element of defamation is met because she was forced to publish BMH's statements on subsequent job applications. BMH argues that defamation by self-publication has been expressly rejected by the Tennessee Supreme Court and by this Court.

In *Press, Inc. v. Verran*, 569 S.W.2d 435 (Tenn. 1978), our Supreme Court, *inter alia*, adopted as law § 580B of the *Restatement (Second) of Torts* (1977):

> § 580B. *Defamation of Private Person.*
> One who publishes a false and defamatory communication concerning a private person . . . is subject to liability, if, but only if, he
> (a) knows that the statement is false and that it defames the other,
> (b) acts in reckless disregard of these matters, or
> (c) acts negligently in failing to ascertain them.

*Press,* 569 S.W.2d at 442. We must decide in this appeal whether the publication element of defamation is met when an employee is compelled to publish on a job application a former employer's official reasons for the employee's termination. "Publication" is a term of art

3

meaning the communication of defamatory matter to a third person. ***Quality Auto Parts Co. v. Bluff City Buick Co.***, 876 S.W.2d 818, 821 (Tenn. 1994).

BMH relies on an unpublished opinion of this Court, ***Raiteri v. RKO General, Inc.***, Shelby Law No. 56, 1989 WL 146743 (Tenn. App. Dec. 6, 1989). In ***Raiteri***, Charles Raiteri, a reporter for WHBQ AM-TV in Memphis, was terminated for alleged biased and unbalanced reporting. ***Id***. at *1-2. Raiteri filed a complaint for defamation against the TV station alleging that the statements that caused him to be disciplined for biased and unbalanced reporting were published to third parties. ***Id***. at *2. The trial court granted summary judgment in favor of the defendants, and this Court affirmed the trial court. ***Id***. at *8. This Court held that "the statement that Raiteri's report was 'biased and unbalanced' is not a defamatory factual statement, but is rather an opinion or characterization based upon the disclosed nondefamatory facts of Raiteri's report itself and is not actionable." ***Id***. at *4. This Court continued and addressed Raiteri's second argument:

> Raiteri also argues that because he had to indicate on employment application forms that he had been fired for preparing a "biased and unbalanced report," the defendants should be liable for this republication. Where the statement is opinion, publication is not material. However, assuming *arguendo* that it is not opinion and it is defamatory, plaintiff's action would fail for want of publication. Although Raiteri cites to cases in other jurisdictions which hold employers liable for republication by the plaintiff under certain circumstances, Raiteri fails to cite any cases in Tennessee on point. In *Sylvis v. Miller*, 96 Tenn. (12 Pickle) 94, 33 S.W. 921 (1896), the Tennessee Supreme Court found there was no publication when the plaintiff received a letter from the defendant and exhibited this letter to relatives and friends. Therefore, the plaintiff cannot base his cause of action upon his own republication. Furthermore, since we have found the statement "biased and unbalanced report" to be an opinion, Raiteri cannot maintain an action for republication of a constitutionally-protected opinion.

***Id***. In this case, the trial court relied on ***Raiteri*** in its order granting summary judgment in favor of BMH.

We do not believe that ***Raiteri*** should control on the issue of publication. First, the alternative holding is dicta from an unpublished opinion. The Court stated that "publication is not material." ***Id.*** In the present case, publication is the central issue. Second, the ***Raiteri*** Court considered republication of an opinion, while the present case involves republication of a factual statement.

BMH also cites *Railroad v. Delaney*, 102 Tenn. (18 Pickle) 289, 52 S.W. 151 (1899). In *Delaney*, the plaintiff asked for and received a recommendation letter from his employer. 102 Tenn. at 291-92. Plaintiff's declaration alleged that the letter contained false information and "was made willfully and maliciously for the purpose of injuring plaintiff in his trade and calling." *Id.* at 290. Defendant filed a demurrer to the declaration on the ground that there was no averment of special damages, which was necessary where the words are not libelous per se. *Id.* at 290-91. The trial court overruled the demurrer, and subsequently judgment was entered on a jury verdict for the plaintiff. *Id.* at 291.

On appeal, the Supreme Court, in discussing the evidence at the trial, noted that only the plaintiff and the plaintiff's agent acquired knowledge of the letter from defendant. *Id.* at 292. The Court said:

> There is no evidence of publication in this record. The proof is undisputed that this letter was written by Sullivan at the request of Mr. Speed, who was acting by authority of the plaintiff. Speed accepted it and delivered it to plaintiff, who used it in seeking employment. Under the authorities the company is not liable for any of the consequences of the act of Delaney in making publication of the letter containing libelous matter. If a person receives a letter containing libelous matter, he will not be justified in publishing it. *Sylvis v. Miller*, 96 Tenn. 94; *Wilcox v. Moon*, 24 Atlantic Reporter, 244.

*Id*. at 294.

The Supreme Court reversed the trial court, sustained the demurrer, and dismissed the suit. *Id.* at 297.

We note a marked difference in *Delany* and the case at bar. We should first note, however, that although the Court discussed the facts pertaining to publication of the alleged defamation, the Court's decision was based upon the allegations of the declaration, and the Court sustained the demurrer originally filed by the defendant. Therefore, the Court's comment concerning publication of the alleged defamation was dicta. Moreover, the defamatory letter was a letter of recommendation, which the plaintiff was free to use or not to use at his discretion, and his use of the letter resulted in a voluntary publication of the alleged defamatory material.

In both *Raiteri* and *Delaney*, the Court cited *Sylvis v. Miller*, 96 Tenn. (12 Pickle) 94, 33 S.W. 921 (1896). In *Sylvis*, the plaintiff received a defamatory letter through the mail and showed its contents to his relatives and friends. 96 Tenn. at 95. The Supreme Court stated,

"[T]he defendant is not answerable for anything the plaintiff may choose to do with the letter after it has once safely reached his hands. . . . If a person receives a letter containing libelous matter, he will not be justified in publishing it." *Id*. (citations omitted).

Sullivan argues that *Sylvis* is distinguishable because that case had nothing to do with employment and because the self-publication was voluntary. BMH argues that no Tennessee case, including *Sylvis*, has held that "compelled" as opposed to "voluntary" self-publication satisfies the publication requirement for a defamation claim.

Other than *Delany* and *Raiterri*, which we have heretofore noted are distinguishable from the case at bar, we can find no cases directly on point in Tennessee dealing with self-publication of alleged defamatory matters in an employment setting. There are cases from other jurisdictions dealing with this question and with differing results. It appears that the minority view is that self-publication in the employment setting under certain circumstances satisfies the publication requirement of defamation actions. In *Lewis v. Equitable Life Assurance Society*, 389 N.W.2d 876 (Minn. 1986), the Minnesota Supreme Court specifically considered self-publication of defamatory matter to prospective employers:

> The company presents two arguments against recognition of the doctrine of compelled self-publication. It argues that such recognition amounts to creating tort liability for wrongful discharge which, it asserts, has been rejected by this court. . . . If plaintiffs here can establish a cause of action for defamation, the fact that the defamation occurred in the context of employment discharge should not defeat recovery.
>
> The company also argues that recognition of the doctrine of self-publication would discourage plaintiffs from mitigating damages. This concern does not appear to be a problem, however, if liability for self-publication of defamatory statements is imposed *only* where the plaintiff was in some significant way compelled to repeat the defamatory statement and such compulsion was, or should have been, foreseeable to the defendant. Also, the duty to mitigate can be further protected by requiring plaintiffs when they encounter a situation in which they are compelled to repeat a defamatory statement to take all reasonable steps to attempt to explain the true nature of the situation and to contradict the defamatory statement. In such circumstances, there would be no voluntary act on the part of the plaintiff that would constitute a failure to mitigate. . . .
>
> The trend of modern authority persuades us that Minnesota law should recognize the doctrine of compelled self-publication. We acknowledge that recognition of this doctrine provides a significant new basis for maintaining a cause of action for defamation and, as such, it should be cautiously applied. However, when properly applied, it need not substantially broaden the scope of liability for defamation. The concept of compelled self-publication does no more than hold the originator

of the defamatory statement liable for damages caused by the statement where the originator knows, or should know, of circumstances whereby the defamed person has no reasonable means of avoiding publication of the statement or avoiding the resulting damages; in other words, in cases where the defamed person was compelled to publish the statement. In such circumstances, the damages are fairly viewed as the direct result of the originator's actions.

Properly applied, the doctrine of self-publication does not unduly burden the free communication of views or unreasonably broaden the scope of defamation liability. Accordingly, we hold that in an action for defamation, the publication requirement may be satisfied where the plaintiff was compelled to publish a defamatory statement to a third person if it was foreseeable to the defendant that the plaintiff would be so compelled.

*Id.* at 887-88; *see also Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo. 1988) (When the originator of the defamatory statement has reason to believe that the person defamed will be under a strong compulsion to disclose the contents of the defamatory statement to a third person, the originator is responsible for that publication.); *Belcher v. Little*, 315 N.W.2d 734 (Iowa 1982) (The injured party cannot create his own cause of action by communicating the slanderous statements to others unless under a strong compulsion to do so. What constitutes strong compulsion must of necessity be decided by the finder of fact under the circumstances in each case when substantial evidence of such compulsion is introduced.); *McKinney v. County of Santa Clara*, 168 Cal. Rptr. 89 (Cal. Ct. App. 1980) (The rationale for making the originator of a defamatory statement liable for its foreseeable republication is the strong causal link between the actions of the originator and the damage caused by the republication. This causal link is no less strong where the foreseeable republication is made by the person defamed operating under a strong compulsion to republish the defamatory statement and the circumstances which create the strong compulsion are known to the originator of the defamatory statement at the time he communicates it to the person defamed.); *Grist v. Upjohn Co.*, 168 N.W.2d 389 (Mich. Ct. App. 1969) (Where the conditions are such that the utterer of the defamatory matter intends or has reason to suppose that in the ordinary course of events the matter will come to the knowledge of some third person, a publication may be effected.); *Colonial Stores, Inc. v. Barrett*, 38 S.E.2d 306 (Ga. Ct. App. 1946) (Republication by plaintiff of defamatory matter to prospective employer when defendant knew that plaintiff would have to republish it was publication for a defamation claim.).

On the other hand, it appears that the majority view is that self-publication even in

7

employment cases does not satisfy the publication requirement. *See DeLeon v. Saint Joseph Hospital*, 871 F.2d 1229 (4th Cir. 1989) (rejecting the doctrine of self-publication because the doctrine might visit liability for defamation on every employer each time a job applicant is rejected); *Strange v. Nationwide Mutual Ins. Co.*, 867 F. Supp. 1209 (E.D. Pa. 1994) (Pennsylvania law does not recognize compelled self-publication as constituting publication for defamation purposes when the initial communication is from an employer to an employee regarding the reasons for the employee's dismissal.); *Gore v. Health-Tex, Inc.*, 567 So. 2d 1307 (Ala. 1990) (refusing to hold that a plaintiff's own repetition of allegedly defamatory statements can supply the element of publication essential in a slander action); *Wieder v. Chemical Bank*, 608 N.Y.S.2d 195 (N.Y. App. Div. 1994) (rejecting the tort of defamation by compelled self-publication); *Atkins v. Industrial Telecommunications Ass'n*, 660 A.2d 885 (D.C. 1995) (refusing to predict what Virginia law would be because the doctrine of compelled self-publication has not been widely accepted).

Under the minority view, to allow self-publication to satisfy the publication requirements, the courts generally have developed two approaches: "[T]he first approach imposes liability if the defendant knew or could have foreseen that the plaintiff would be *compelled* to repeat the defamatory statement; the second imposes liability if the defendant knew or could have foreseen that the defendant was *likely* to repeat the statement." *Churchey v. Adolf Coors Co.*, 759 P.2d 1336, 1344 (Col. 1988)(emphasis in original).

There is a factual difference between a "voluntary" self-publication to relatives, friends, or other third persons, and a necessary disclosure on an employment application of a former employer's stated reason for termination of one's employment. In an "employment at will" state, such as Tennessee, a terminated employee has very limited recourse upon termination of employment. If an employer has stated a reason for discharge of the employee, it is reasonable for the employer to expect that the employee seeking new employment will be required to disclose the reason given for the termination of the prior employment. The employee has little choice in applying for new employment and must disclose truthfully the information requested or run the risk of being discovered as a liar at a later date.

By allowing "compelled" self-publication to satisfy the publication requirement, the employer is not left naked. The employer has all the defenses available in any defamation

8

action, such as privilege, opinion, truth or lack of culpability or negligence.

We are persuaded by the reasoning of the Minnesota Supreme Court in *Lewis v. Equitable Life Assurance Society*, 389 N.W.2d 876 (Minn. 1986), heretofore quoted. We understand that recognition of the principle of compelled self-publication is the minority view, but we believe that it is the more fair and more just view. The principle of compelled self-publication in employment cases allows redress for injury where otherwise an employee is left without a remedy.

We believe that the law in Tennessee should recognize the principle of compelled self-publication. We hold that the publication element required for a defamation claim can be met if 1) the republication of the defamatory statement is reasonably foreseeable to the defendant, and 2) the plaintiff is compelled to republish the defamatory statement. The principle of compelled self-publication should be limited to those cases in an employment setting in which the plaintiff is forced to republish false and defamatory reasons for his or her termination on subsequent job applications.

Accordingly, the order of the trial court granting summary judgment to BMH is reversed, and this case is remanded to the trial court for such proceedings as may be necessary. Costs of this appeal are assessed against the appellee.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**DAVID R. FARMER, JUDGE**